## MULLOY *v.* UNITED STATES

No. 655.   Argued April 20, 1970—Decided June 15, 1970

*Robert Allen Sedler* argued the cause and filed briefs for petitioner.

*Joseph J. Connolly* argued the cause for the United States.   On the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Francis X. Beytagh, Jr.,* and *Philip R. Monahan.*

Briefs of *amici curiae* urging reversal were filed by *Marvin M. Karpatkin, Michael N. Pollet,* and *Melvin L. Wulf* for the American Civil Liberties Union et al., and by *Ralph Rudd* and *Benjamin B. Sheerer* for Wayne Spencer Deri et al.

MR. JUSTICE STEWART delivered the opinion of the Court.

Following a jury trial in the United States District Court for the Western District of Kentucky, the petitioner was convicted for refusing to submit to induction into the Armed Forces in violation of § 12 (a) of the Military Selective Service Act of 1967, 62 Stat. 622, as amended, 50 U. S. C. App. § 462 (a) (1964 ed., Supp. IV). He was sentenced to five years' imprisonment and fined $10,000, and his conviction was affirmed by the Court of Appeals for the Sixth Circuit. 412 F. 2d 421. We granted certiorari, 396 U. S. 1036, to consider the petitioner's contention, raised both in the trial court and in the Court of Appeals, that the order to report was invalid because his local board had refused to reopen his I–A classification following his application for a I–O classification as a conscientious objector. The argument is that it was an abuse of discretion for the board to reject his conscientious objector claim without reopening his classification, and by so doing to deprive him of his right to an administrative appeal.

## I

On October 17, 1967, the petitioner, who was then 23 years old and classified I–A (available for military service), wrote to his local Selective Service Board that "[a]fter much, much thinking, seeking, and questioning of my own religious upbringing and political experience I have concluded that I am a conscientious objector. I am therefore opposed to war in any form." In response to this letter the clerk sent him the Special Form for Conscientious Objectors (SSS Form 150), which he promptly completed and returned.[1]

---

[1] At this time there was no outstanding order to report for induction, though at least two orders to report had previously been sent and subsequently canceled for various reasons not relevant

The petitioner stated in the form that he was conscientiously opposed by reason of his religious training and belief to participation in war in any form. He said that he believed in a Supreme Being and that this belief involved duties superior to those arising from any human relation; that his religious training had taught him that it was against God's law to kill; and that as a member of the armed services he would be obliged to kill or indirectly assist in killing. In response to the form's inquiry as to how, when, and from what source he had received the training and acquired the belief upon which his conscientious objection was based, he gave a detailed answer, explaining that he had been born and raised a Catholic; that he had at one point in his life thought he would become a priest; that he had gone through a religious crisis in college and left the church, but had returned to it and been greatly influenced by the writings of Thomas Merton, who had preached nonviolence. He said that he had learned in the work he had been doing with an antipoverty organization in Appalachia of the need for love and understanding among people, and of the futility of violence. He concluded that his early training, coupled with his adult experience, particularly as a worker among the Appalachian poor, had brought him to his present position as a conscientious objector.

The petitioner also gave detailed and specific answers to other questions that the form asked, such as when and where he had given public expression to the views expressed as the basis for his conscientious objector claim, and what actions or behavior he thought most conspicuously demonstrated the consistency and depth of his religious convictions. Five people who were well acquainted with the petitioner wrote to the board, attest-

here. Prior to the petitioner's classification in I–A he had had a II–S student deferment and subsequently a II–A occupational deferment.

ing to the sincerity of his beliefs. One letter was from a Catholic priest, who wrote of the petitioner's honesty and integrity and said that he felt military service would do violence to the petitioner's conscience. Other letters from people who had worked with the petitioner spoke of his belief in nonviolence and confirmed the accuracy of the incidents that the petitioner had referred to in the form as manifestations of his beliefs. The petitioner's brother wrote that while he vehemently disagreed with the petitioner's unwillingness to bear arms for his country, he still felt that the petitioner was sincere in his beliefs.

In response to the petitioner's request to discuss his application with the board, the clerk wrote that the board had decided to grant him a personal appearance. This interview took place on November 9 and lasted about 10 or 15 minutes. It was attended by three of the four local board members. The résumé of the interview prepared by the clerk stated that the petitioner "advised that he was claiming a C. O. classification because he had learned through experience and did not until later in life realize the importance of now believing as he did," and that he "felt that military service would interrupt his work and there would be no one else to take his place." The minute entry in the petitioner's file indicated that all members present felt the information in the form, and accompanying letters, together with what was learned at the interview, did not warrant a reopening of the petitioner's I–A classification. However, no formal vote on the petitioner's application was taken until January 11, 1968, at which time, the minute entry indicated, all four members were present and again it was noted that all "felt this information did not warrant reopening" of the I–A classification. After receiving notification of the board's action, the petitioner wrote to the board on January 21 seeking to appeal its failure to reclassify

him I–O. He said that he considered the November interview to have been a reopening of his case. On January 23 the board replied that the interview had been extended as a matter of courtesy, and that it had not at any time reopened the petitioner's classification. On the same day the petitioner was ordered to report for induction on February 23, 1968. The petitioner reported, but refused to submit to induction. This refusal resulted in the criminal charge that led to his conviction under 50 U. S. C. App. § 462 (a) (1964 ed., Supp. IV).

## II

Under the Selective Service regulations a "local board may reopen and consider anew the classification of a registrant . . . [if presented with] facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification . . . ." 32 CFR § 1625.2.[2] Even if the local board denies the requested reclassification, there is a crucial difference between such board action and a simple refusal to reopen the classification at all. For once the local board reopens, it is required by the regulations to "consider the new information which it has received [and to] again classify the registrant in the same manner as if he had never before been classified." 32 CFR § 1625.11. A classification following a reopening is thus in all respects a new and original one and, even if the registrant is placed in the same classification as before, "[e]ach such classification [following the reopening] shall be followed by the same right of appearance before the local board and . . . of

---

[2] If reclassification is sought *after* an order to report for induction has been mailed to the registrant, the regulations provide that the classification "shall not be reopened . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 CFR § 1625.2.

appeal as in the case of an original classification." 32 CFR § 1625.13. Where, however, in the opinion of the board, no new facts are presented or "such facts, if true, would not justify a change in such registrant's classification . . . ," 32 CFR § 1625.4, the board need not reopen, and following such a refusal to reopen, the registrant has no right to a personal appearance or to an appeal. Thus, whether or not a reopening is granted is a matter of substance, for with a reopening comes the right to be heard personally and to appeal. While the petitioner here was given an interview as a matter of courtesy, the board's refusal to reopen his classification denied him the opportunity for an administrative appeal from the rejection of his conscientious objector claim. Therefore, if the refusal to reopen was improper, petitioner was wrongly deprived of an essential procedural right, and the order to report for induction was invalid.

## III

Though the language of 32 CFR § 1625.2 is permissive, it does not follow that a board may arbitrarily refuse to reopen a registrant's classification. While differing somewhat in their formulation of precisely just what showing must be made before a board is required to reopen, the courts of appeals in virtually all Federal Circuits have held that where the registrant has set out new facts that establish a prima facie case for a new classification, a board must reopen to determine whether he is entitled to that classification.[3] Not to do

---

[3] *United States* v. *Gearey,* 379 F. 2d 915, 922 n. 11 (C. A. 2d Cir. 1967), adopting the standard enunciated in *United States* v. *Burlich,* 257 F. Supp. 906, 911 (D. C. S. D. N. Y. 1966); *United States* v. *Turner,* 421 F. 2d 1251 (C. A. 3d Cir. 1970); *United States* v. *Grier,* 415 F. 2d 1098 (C. A. 4th Cir. 1969); *Robertson* v. *United States,* 404 F. 2d 1141 (C. A. 5th Cir. 1968), rev'd *en banc* on other grounds, 417 F. 2d 440 (1969); *Townsend* v. *Zimmerman,* 237 F. 2d 376 (C. A. 6th Cir. 1956); *United States* v. *Freeman,*

so, these courts have held, is an abuse of discretion, and we agree.

Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file. See *United States* v. *Burlich,* 257 F. Supp. 906, 911. For in the absence of such refutation there can be no basis for the board's refusal to reopen except an evaluative determination adverse to the registrant's claim on the merits. And it is just this sort of determination that cannot be made without affording the registrant a chance to be heard and an opportunity for an administrative appeal.

Because of the narrowly limited scope of judicial review available to a registrant,[4] the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System.[5] Where a prima facie case for reclassification has been made, a board cannot deprive the registrant of such review by simply refusing to reopen his file.[6] Yet here the board did

---

388 F. 2d 246 (C. A. 7th Cir. 1967); *Davis* v. *United States,* 410 F. 2d 89 (C. A. 8th Cir. 1969); *Miller* v. *United States,* 388 F. 2d 973 (C. A. 9th Cir. 1967); *Fore* v. *United States,* 395 F. 2d 548, 554 (C. A. 10th Cir. 1968).

[4] See, *e. g., Clark* v. *Gabriel,* 393 U. S. 256.

[5] See, *e. g., United States* v. *Freeman,* 388 F. 2d 246; *United States* v. *Turner,* 421 F. 2d 1251; *Olvera* v. *United States,* 223 F. 2d 880 (C. A. 5th Cir. 1955); see also *Simmons* v. *United States,* 348 U. S. 397.

[6] The scope of judicial review is, as a practical matter, particularly narrow where the registrant is claiming conscientious objector status. "A sincere claimant for conscientious objector status cannot turn

precisely that. For it is clear that the petitioner's SSS Form 150 and the accompanying letters constituted a prima facie showing that he met the statutory standard for classification as a conscientious objector (50 U. S. C. App. § 456 (j) (1964 ed., Supp. IV)), and the Government now virtually concedes as much.

The Government suggests, however, that the board might have concluded that the prima facie claim had been undercut by the petitioner himself—by his statements at the courtesy interview or because his demeanor convinced the board that he was not telling the truth. There is, however, but scant evidence in the record that the board's action was based on any such grounds. And, in any event, it is on precisely such grounds as these that board action cannot be predicated without a reopening of the registrant's classification, and a consequent opportunity for administrative appeal.

This is not to say that on all the facts presented to it the board might not have been justified in refusing to grant the petitioner a I–O classification; it is to say that such refusal could properly occur only after his classification had first been reopened. The board could not deprive the petitioner of the procedural protections attending reopening by making an evaluative determination

---

to the habeas corpus remedy [to challenge the legality of his classification] because his religious belief prevents him from accepting induction under any circumstances. As a result he is limited to seeking review in a criminal trial for refusal to submit. In this criminal proceeding, as in any proceeding reviewing a draft classification, his defense of invalid classification is tested by the 'basis in fact' formula. Under these circumstances conviction is almost inevitable, since the Board's refusal to grant the conscientious objector classification is based on an inference as to the sincerity of the registrant's belief and there will almost always be something in the record to support an inference of lack of sincerity." *United States* v. *Freeman,* 388 F. 2d 246, 248–249 (C. A. 7th Cir. 1967).

of his claim while purportedly declining to reopen his classification.[7]

Since the petitioner presented a nonfrivolous, prima facie claim for a change in classification based on new factual allegations which were not conclusively refuted by other information in his file, it was an abuse of discretion for the board not to reopen his classification, thus depriving him of his right to an administrative appeal. The order to report for induction was accordingly invalid, and his conviction for refusing to submit to induction must be reversed.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

---

[7] The Government argues that if the local board must reopen whenever a prima facie case for reclassification is stated by the registrant, he will be able to postpone his induction indefinitely and the administration of the Selective Service System will be undermined. But the board need not reopen where the claim is plainly incredible, or where, even if true, it would not warrant reclassification, or where the claim has already been passed on, or where the claim itself is conclusively refuted by other information in the applicant's file. Moreover, a registrant who makes false statements to his draft board is subject to severe criminal penalties. 50 U. S. C. App. § 462 (a)· (1964 ed., Supp. IV).