Michael Joseph **WARWICK**

v.

**Commanding Officer, Commander Thomas M. VOLATILE, Armed Forces Examining and Extrance Station, Philadelphia, Pennsylvania,**

and

**Secretary of Defense.**

**Civ. A. No. 70–395.**

United States District Court,
E. D. Pennsylvania.

Aug. 7, 1970.

Read Rocap, Jr., Media, Pa., for petitioner.

Robert N. DeLuca, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

Petitioner, Michael J. Warwick, was inducted into the Armed Forces of the United States on February 6, 1970. By petition for Writ of Habeas Corpus he has challenged the lawfulness of that induction. As has become the almost common practice, Warwick presented, *on the eve of induction,* information about changes in his status which he alleged would create extreme hardship to a dependent and thus entitle him to a III–A deferred classification. These changes were called to the Local Board's attention in some instances only a few days before he submitted to induction, and, indeed, it was only on the very afternoon (3:00 P.M. to 3:30 P.M.) before induction that a Doctor of Osteopathy for the first time in some detail informed the Board that "I am convinced that if Michael is inducted [his mother] will require hospitalization for mental illness. She is defi-nitely on the verge of a complete nervous breakdown."

The petitioner has presented two alternative grounds for relief. He claims that: (1) Local Board No. 59 failed to reopen and consider anew his classification as required by 32 CFR, § 1625.2, the Selective Service Regulations; or (2) Local Board No. 59 while purporting to not reopen and consider anew his classification, did reopen but refused to grant him appeal rights as required by 32 CFR, § 1625.13.

■ I find that petitioner's second theory is wholly unsupported. There is no evidence to support a finding that the Local Board did in fact reopen and consider anew his classification. After an interview at the Local Board on November 7, 1969, the members determined that the information submitted by petitioner as to the economic status of his family did not warrant the reopening of his classification. In compliance with 32 CFR, § 1625.4, the Board so notified petitioner by letter dated November 7, 1969.

Petitioner's first theory merits a more extensive discussion. Warwick claims that he submitted new information during the period February 2–February 6, 1970 and that his Local Board failed to reopen and consider anew his classification as required by 32 CFR, § 1625.2. The pertinent part of that regulation provides:

> "§ 1625.2 *When registrant's classification may be reopened and considered anew.*
>
> "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to*

*Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."* (Emphasis added.)

Warwick claimed that his induction would result in extreme economic hardship to his mother or would cause extreme hardship by reason of his mother's increasing nervous exhaustion resulting from the prospect of his entering the Armed Forces.

The Supreme Court of the United States, in a preinduction case, recently approved the proposition that "where the registrant has set out new facts which establish a prima facie case for a new classification, a [Selective Service] Board must reopen to determine whether he is entitled to that classification." Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, at 1770–1771, 26 L.Ed.2d 362 (1970).

■■ When a Local Board has acted, the area of review open to the District Court is a narrow one indeed. However strongly the Court may disagree with the ultimate conclusion of a Local Board, the Court can rescind the Local Board's action only if there is "no basis in fact" for the Board members' judgment. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The "basis in fact" test is applicable to a Board's refusal to reopen a registrant's classification. Petrie v. United States, 407 F.2d 267 (C.A.9, in banc, 1969).

■■ Because Warwick did not seek a reopening of his classification until after he was ordered to report for induction, Local Board No. 59 could not reopen unless it first specifically found that there had been a change in his status resulting from circumstances over which he had no control. Further, to gain reopening and classification anew, the registrant was obligated to present facts not considered when he was classified which, if true, would justify a change in his classification.

The disposition of Warwick's petition requires a consideration of the following question: Did Warwick present to his Local Board new facts—resulting from circumstances over which he had no control—which established a prima facie case for a new classification? If he did present such new facts, then the Board's failure to reopen has no basis in fact, and petitioner Warwick will be granted a Writ of Habeas Corpus. If he did not, the Board's action will stand and the petition will be dismissed.

A hearing was held and briefs were filed with the Court. The following facts emerged:

Petitioner Warwick was classified I–A on August 20, 1969. He was advised of his right to appeal to the State Appeal Board and of his right to make a personal appearance before his Local Board, but he took neither action during the thirty days provided by the Regulations. 32 CFR, §§ 1624.1, 1626.2.

On September 30, 1969, Local Board No. 59 ordered Warwick to report for induction on October 20, 1969. By letter dated October 5, 1969, petitioner's mother, Mrs. Dorothy A. Warwick, contacted Local Board No. 59 "to make an appeal for my son Michael J. Warwick." Mrs. Warwick related that her husband had died of cancer 18 years earlier, leaving her with a married daughter and the registrant. One of her daughter's two children was afflicted with a rare disease. Mrs. Warwick informed the Board that she was "only able to work three days a week and require[d] Michael's help to keep my home going." Mrs. Warwick's letter was sent two weeks and two days after the expiration of the thirty day period for filing an appeal, a fact she attributed to a "lack of understanding my right to appeal." In effect, Mrs. Warwick requested that her son be reclassified from I–A to III–A. 32 CFR, § 1622.-30 provides in pertinent part: "In Class III–A shall be placed any registrant whose induction into the armed forces

would result in extreme hardship * * to his * * * parent * * * who is dependent upon him for support * * *."

The Local Board replied to Mrs. Warwick on October 8, 1969, telling her that her letter could not be considered a valid appeal. The Board's letter did conclude, however:

"We will attempt to schedule an interview before the local board prior to Michael's induction date to permit his discussing the hardship that might occur at home if he is inducted. You may accompany him to this interview."

Petitioner's scheduled induction was postponed until November, and he was asked to meet with the Local Board on November 7, 1969. Mrs. Warwick again wrote on October 12, 1969 to inform the Local Board that Michael's uncle had been "killed in the service of our country * * * during the Second World War" and that her son was thus "the sole surviving heir of the Warwick family."

On November 7, 1969, petitioner appeared before Local Board No. 59. The record does not indicate that Mrs. Warwick attended the interview. Petitioner submitted a handwritten summary of "approximate household maintenance and expenses" which totalled $4,916.40. Items listed included utilities, insurance costs and food expenditures. Petitioner also filled out and returned a Dependency Questionnaire which revealed that from an income of $5,257.43, he contributed $2,080 to the upkeep and maintenance of his mother's home. Mrs. Warwick's approximate annual income amounted to $3,838 of which the net income was allegedly $2,983.

Michael stated that "[m]y mother needs my financial and moral support. It is necessary that I give her $40.00 a week to help her meet household expenses." In a written statement Mrs. Warwick concluded that "I could not do without Michael's weekly contribution of $40.00."

Local Board No. 59 concluded otherwise. Perhaps impressed by the fact that Mrs. Warwick owned her mortgage-free home and had a $16,000.00 bank account, the Board determined that the information submitted by petitioner did not warrant the reopening of the registrant's classification. In compliance with 32 CFR, § 1625.4, the Board so notified petitioner on November 7, 1969. Warwick was ordered to report for induction on November 14, 1969.

■ With the Local Board's action of November 7, 1969, I find no error. Our task is limited and well-defined. Certainly there was a basis in fact for the Board's decision not to reopen petitioner's classification. It was within the province of the Board members to find that, given Mrs. Warwick income and her $16,000 bank account, the loss of some part of her son's contribution would not result in an "extreme hardship" for her. The Board could certainly conclude that petitioner had presented no new facts—resulting from circumstances over which he had no control—which established a prima facie case for a new classsfication.

But petitioner's case did not end on November 7, 1969; nor can our consideration. Warwick's Selective Service file reveals that he obtained a job with General Electric Company as an "Inspector-Electro-Mechanical Development, in the Re-Entry and Environmental Systems Division" and sought an occupational deferment which was denied. Warwick was again ordered to report for induction, first on December 2, 1969, and finally by letter dated January 22, 1970, he was ordered to report on February 6, 1970.

■ The events from Monday, February 2, 1970 to Friday, February 6, 1970, require the closest scrutiny for the determination of this case. On February 2, 1970, Dr. Theodore C. Loux filed or caused to be filed with the Board a handwritten note on his prescription blank form. The note stated: "This is to advise that Mrs. Dorothy Warwick has been under my care for nervous exhaustion. She is unable to work at this time." While I find that Dr. Loux's let-

ter taken alone is so vague that it does not constitute a prima facie case for a change in classification, it does represent petitioner's first attempt to bring new information to the attention of the Board.

■ The next day, February 3, 1970, the petitioner wrote a three page letter to the Board, asking the members to reconsider his induction into the armed forces. "The reason I am making this appeal," Warwick wrote, "is because of the illness of my mother." While I find that petitioner's letter of February 4, 1970 either alone or when considered with Dr. Loux's letter of February 2, 1970 does not constitute a prima facie case for a change in classification it does represent still another attempt by petitioner to bring new information to the attention of the Board.

On February 4, 1970 petitioner retained legal counsel. On February 5, 1970 between 3:00 P.M. and 3:30 P.M., petitioner's attorney, Mr. Read Rocap, Jr., appeared at the office of the Local Board and presented to the Board's Executive Secretary, Miss Rebecca M. Boggs, his own letter and a second letter from Dr. Loux. Mr. Rocap's letter requested a postponement of the induction scheduled for February 6, 1970 and a re-opening of Warwick's classification "in consideration of the prima facie case presented for a deferment under 3–A (hardship)." Mr. Rocap's letter concluded: "This request is based upon information which has been previously presented to the Board and the more detailed information and opinion sent to the Board by Dr. Theodore C. Loux." While I find that Mr. Rocap's letter of February 5, 1970 added nothing to petitioner's claim for reopening and is in substance merely a series of unsubstantiated legal conclusions, it at least represents a third attempt to call to the attention of the Board the alleged changed medical status of registrant's mother.

Dr. Loux's February 5, 1970 letter to the Local Board is of sufficient importance to warrant quotation in full:

(Letterhead of)

DR. THEODORE C. LOUX
1201 Garfield Avenue
Havertown, Pa., 19083

HIlltop 6–0700

February 5, 1970

"Local Board No. 59
405 Center Building
6800–16 Market Street
Upper Darby, Pa. 19082

LOCAL BOARD NO. 59
405 CENTER BLDG.
6800–16 MARKET ST.
DARBY, PA.

"Re: Warwick, Michael Joseph
"SSS# 36–59–46–35

"Gentlemen:

"This is to advise that Mrs. Dorothy Warwick has been under my care for many years. She recently presented herself at my office in a state of utter panic at the impending induction of her son into the Armed Forces. Apparently he had an occupational deferment and was laid off from Westinghouse. He recently got a position at G. E. in the Re-entry & Environmental Systems division for about a month.

"Mrs. Warwick is a widow and Michael is her sole support at this time. She is in no condition to be able to hold a job at this time. This is not just an ordinary type of nervousness associated with a son entering service. Her husband died of a malignancy about 18 years ago,

an event preceded by the death of her mother and father. She is dwelling on this phase and sees only a pending doom with losing her son.

"I have placed her on tranquilizers in an attempt to calm her but I am convinced that if Michael is inducted she will require hospitalization for mental illness. She is definitely on the verge of a complete nervous breakdown.

"Mrs. Warwick has one sister who is widowed with four children. She also has a daughter who has a child with Smith's Syndrome which makes the child almost helpless and requires a considerable amount of help. She has been trying to help her daughter on this account. Consequently, this woman does not have the time or physical ability to hold down a full time job. She has tried to work part time to make ends meet.

"It is my opinion that the induction of Michael into the Armed Forces would be a distinct hardship if not a tragedy for this woman.

"Yours very truly,
"/s/ Theodore C. Loux, D
"tcl/e  Dr. Theordore C. Loux  "

───────◆───────

■ Paragraphs 1 and 2 for our purposes have no substantive value, and certainly I do not find that a mother's anxiety, utter panic, or nervousness in contemplation of her son's induction are such a change in circumstances as would constitute a prima facie case for a change in classification. I must note, however, the basic vagueness and probable evasiveness of Dr. Loux's statements. He does not say that Mrs. Warwick is not working; nor has anyone alleged that fact. He merely states that "she is in no condition to be able to hold a job at this time." Furthermore his statement that "Michael is her sole support at this time" is inaccurate since she does have $16,000 in the bank, indicating that she is considerably more affluent than 25,000,000 Americans who live below the Federal Government's Poverty Index. (See Poverty and Plenty: The American Paradox. The Report of the President's Commission on Income Maintenance Programs, November 1969, U. S. Government Printing Office, Washington, D.C. 20402.[1])

Paragraph 4, which concentrates on Mrs. Warwick's daughter's problem with an ill child, does not mention that her daughter's husband earns approximately $10,000 per year. (See Interview Statement, November 7, 1969, prepared by Miss Boggs.) Paragraph 5 is valueless from any fact-finding standpoint.

■ We must now focus on the third paragraph of Dr. Loux's letter of February 5, 1970:

"I have placed her on tranquilizers in an attempt to calm her but I am convinced that if Michael is inducted she will require hospitalization for mental illness. She is definitely on the verge of a complete nervous breakdown."

[1]. I recognize that my findings on economic hardship are perhaps in conflict with the decision of my distinguished colleague in Radel v. Volatile, Commanding Officer, 312 F.Supp. 1300 (E.D.Pa., 1969), where he found that there was a prima facie case of extreme hardship where the petitioner's parents had "accumulated savings of $25,000."

An analysis of this paragraph requires that one distinguish a prognosis from a diagnosis. The Local Board was not advised that Mrs. Warwick had had a complete nervous breakdown, or that she was having a complete nervous breakdown. Rather, the Board was given a prediction that she was "on the verge of a complete nervous breakdown." The Local Board was not advised of any specific symptomatology. Nor was the Board advised that she had been hospitalized or was hospitalized, rather it was contemplated that she "will require hospitalization." Can it be said that this type of prognosis requires a judicial finding of a prima facie case for a change in classification?

If it is a prima facie case, petitioner has met his burden without a scintilla to spare. Some men may question whether he has met his burden. Certainly I would not categorically state that petitioner has met his burden. It appears, however, that petitioner's claim—a claim reasonable men might dispute—was never considered by the members of Warwick's Local Board.

At the hearing in this Court petitioner's attorney cross-examined Miss Boggs, the Executive Secretary of Local Board No. 59 about the two letters he delivered to the Board on February 5, 1970—his own and the letter from Dr. Loux:

"Q: Now, did you contact any members of the local board after receiving my letters?

"A: No.

\* \* \* \* \* \*

"Q: You didn't contact them that day at all?

"A: No, sir.

"Q: Did you make an effort to?

"A: No.

"Q: Now, this was Thursday [February 5]?

"A: Yes.

"Q: And induction was the next day [February 6]?

"A: Yes.

"Q: Now, did the local board consider in any way the letter I delivered to you from Dr. Loux?

\* \* \* \* \* \*

"A: No.

\* \* \* \* \* \*

"Q: I would gather—tell me if this is correct, Miss Boggs—that the local board was completely unaware of my communication of the 5th and Dr. Loux's letter?

"A: Yes.

(Notes of Testimony Hearing, pp. 16 and 17.)

In United States ex rel. Berman v. Craig, 207 F.2d 888, at 891 (1953) the United States Court of Appeals for the Third Circuit stated:

"Sections 1625.1 and 1625.2 of the [Selective Service] Regulations taken together require a *local board* to consider anew the classification of a registrant who reports, within 10 days after it occurs, a change in his status which may require his reclassification. This it is the board's duty to do even though, as here, an order to report for induction has been sent to the registrant, provided he has not yet been inducted."

The Selective Service System has placed important responsibilities on the members of Local Boards for evaluating the status of registrants in light of the particular characteristics of each registrant and the needs of the registrant's family and the local community. The sensitive and difficult responsibilities involved in classifying registrants cannot be delegated to, or assumed by, the clerks of the Local Boards. Nor should these responsibilities be discharged by the Courts when the Local Board has not first had the opportunity to actually

evaluate the factual claim. If the members of a Local Board have not considered a claim for reopening and reclassification, it is not the responsibility of District Courts to perform this function by sitting "as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies." United States ex rel. Morton v. McBee, 310 F.Supp. 328, 331 (N.D. Ill., 1970). Because the members of the Local Board did not consider the registrant's request for reopening and the evidence submitted to support the request, the order to report for induction was invalid, and accordingly the Writ of Habeas Corpus shall issue.

I am not unmindful of the practical difficulties created by the plaintiff's presentation of new facts only one and one-half hours before closing time and fifteen hours before his scheduled induction. But there does not appear to be a statute of limitations precluding, even on the eve of induction, the presentation of non-frivolous claims of recent changes in status. United States ex rel. Berman v. Craig, *supra*.

I am not concluding that the petitioner, upon the Board's consideration of his claim, is entitled to a III–A classification; I am merely holding that the Local Board must be given the opportunity to exercise its discretion after evaluating the evidence. Thus, the issuance of the Writ in no way prejudices petitioner's Local Draft Board from reconsidering his file and reaching whatever conclusion its findings support.

### ORDER

And now, this 7th day of August, 1970, it is hereby ordered that the petition for Writ of Habeas Corpus is granted and the Order to report for induction is declared null and void.

Respondents are ordered to discharge the petitioner forthwith from the Armed Forces of the United States.