**UNITED STATES of America,**
**Plaintiff,**

v.

**John Oliver CHALKER, Jr., Defendant.**

**No. 71–152 Cr. T.**

United States District Court,
M. D. Florida,
Tampa Division.

Feb. 4, 1972.

---

Claude Tison, Asst. U. S. Atty., U. S.
Dist. Court, Middle Dist. of Florida,
Tampa, Fla., for plaintiff.

Jack P. Attias, Miami, Fla., for defendant.

## MEMORANDUM OPINION and ORDER

KRENTZMAN, District Judge.

This is a Selective Service case. The defendant, John Oliver Chalker, is charged in a one count indictment with failure to report to his local board for induction in violation of Title 50, Appendix, U.S.C. § 462(a). Before the Court is the defendant's "motion raising defenses" filed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. The Court has considered the motion and the memoranda submitted relative thereto.

The facts as evidenced by the defendant's Selective Service file are uncontested. The defendant registered with his local draft board in Lakeland, Florida, in 1962. For some time thereafter he held a series of I–A and II–S (student deferment) classifications. While at school at Chipola Junior College the defendant also worked as a part time spray pilot for S & S Air Service located in Marianna, Florida. In the summer of 1966, the defendant began full time work as a spray pilot and shortly thereafter he received a II–A (occupational deferment) from his local board at the request of S & S Air Service. For some time the defendant's occupation alternated from spray pilot to student and he received deferments in both capacities. In January of 1968 the defendant was classified I–A. The S & S Air Service again requested that the defendant receive an occupational deferment. The local board denied this request and the defendant requested a personal appearance before the local board. This request was granted. The defendant's classification was re-opened, but on March 11, 1968, the defendant was again classified I–A.

On March 28, 1968, the defendant requested a hardship deferment on the grounds that his father was in poor health and needed his care and support.

The defendant's classification was re-opened and the defendant was reclassified I–A. On April 15, the S & S Air Service again requested that the defendant be deferred. The defendant's file was again reopened and the defendant was again classified I–A. The defendant then appealed and the local board's decision was affirmed unanimously.

On October 1, 1968, the defendant requested a hardship deferment on the grounds that "I have married a widow with two children and all three are completely dependent upon me." At the request of the local board, the defendant sent the board additional information which indicated that the wife had independent tax free income of $525 per month.

At this point the National Selective Service Headquarters entered the picture, apparently as a result of an inquiry by United States Congressman Robert Sikes of Florida. After securing some of the information in the defendant's file (but not the information relating to the wife's independent income) the National Headquarters notified the State Director that the defendant might be entitled to a III–A (hardship) deferment. On December 2, 1968, the defendant's request for III–A classification was reviewed and the local board found that the information received did not warrant a re-opening of the defendant's classification. The registrant's file was forwarded to State Headquarters at the latter's request.

## I

Whether the Local and State Appeal Boards Lost Jurisdiction of the Defendant by Failing to State the Reasons for Denying Defendant's Requests for II–A, II–C and III–A Classifications

The defendant sets forth the broad proposition that draft boards are required to state specific reasons for the denial of a requested classification. A myriad of cases are cited in support of this proposition. It is apparent from a review of those cases that the defendant

has construed a rule applying only to conscientious objector cases to be a rule of general application.

■ Correctly stated, the rule is that whenever a registrant has asserted a prima facie case of *conscientious objection*, the board must state the grounds upon which the rejection of the claim is based and the reasons in support thereof. The rule was first enunciated in its present form in United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970) and it has been adopted by the Fifth Circuit in United States v. Stetter, 445 F.2d 472 (5 Cir. 1971). There are, of course, many reasons for the rule. The scope of judicial review in Selective Service cases is limited to the determination of whether or not there was a "basis in fact" for the board's classification of a registrant. 50 U.S.C. App. § 460(b) (3). Because of the inherently subjective nature of conscientious objection, it is virtually impossible in most of those cases to determine whether there was a basis in fact for the board's determination unless the board precisely states its reasons for the denial of the classification.

On the other hand, a determination of whether a registrant is entitled to an occupational or hardship deferment is generally objective in nature. In most cases, courts can readily ascertain the reason for the denial of such a claim (if such reason exists) by an inquiry into the file of the registrant. In such a case, the *Broyles* rule does not apply and the draft board is not required to state the precise reasons for its rejection of a registrant's claim.

■ That is not to say that a draft board can reject a prima facie entitlement to reclassification without reason. There must be ascertainable reasons for the board's rejection of a prima facie claim in order for there to be a "basis in fact" for its determination. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). However, the defendant does not assert that there were no reasons for the denial of the claims, but only that those reasons were

not stated by the board. The mere fact that the local and appeal boards did not give precise reasons for the denial of the defendant's requests for occupational and hardship deferments does not, of itself, divest them of jurisdiction.

II

The Defendant's Hardship Claim

A. Whether the Local Board Lost Jurisdiction of the Defendant By its Refusal to Reopen the Defendant's Classification.

A registrant's classification is to be reopened when the request for reopening is accompanied by facts which, if true, would justify a change in the registrant's classification. 32 C.F.R. § 1625.2. Thus, the board makes the decision of whether or not to reopen. If they reopen, then the board must decide whether the defendant should be reclassified.

■■ Where a registrant presents a prima facie case for reopening of his classification which is based upon factual allegations which are not conclusively refuted by other information in the registrant's file, the refusal of the draft board to reopen the classification constitutes an abuse of the discretion vested in the board. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). Of course, the failure of a draft board to comply with the regulations by which it is governed, will result in its loss of jurisdiction over the registrant and render its orders to that registrant void. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

■ The defendant contends that the local board improperly refused to reopen defendant's classification when he requested a hardship deferment after his marriage. The threshold question is whether the defendant presented the board with a prima facie case for reopening his classification. The defendant contends that his allegation that he had "married a widow with two children and all three are completely dependent

on (him)," stated a prima facie case for reopening. The defendant's allegation did not state a prima facie claim. It did not assert facts, but merely asserted a conclusion unsupported by facts. Based upon that mere allegation, the board could have made neither a positive nor negative decision as to whether to reopen the defendant's classification. Therefore, the board properly requested that the defendant supply it with some facts in support of his claim so that it could make a decision under 32 C.F.R. § 1625.2. When the facts were supplied they revealed that the defendant's wife and children had considerable independent tax free income even if the defendant's wife did not engage in gainful employment. There is no evidence in the file which indicates that the wife could not work. The defendant's claim was based solely upon financial hardship. The facts before the board indicated that the defendant and his wife were actually doing quite well financially and would continue to do so even if he were drafted. Clearly, the defendant's request for reclassification was not accompanied by facts which, if true, would have justified a change in his classification. 32 C.F.R. § 1625.2, *Mulloy, supra.* Accordingly, the board's refusal to reopen the defendant's classification was entirely proper.

B. Whether there was a de-facto reopening of the defendant's classification upon his request for hardship deferment.

■ The defendant contends that the local board did, in fact, re-open his classification for a consideration on the merits upon his request for a hardship deferment mentioned above. When a draft board makes an evaluative determination of the registrant's claim on the merits without formally re-opening the registrant's classification, the draft board improperly deprives the registrant of his right to appeal the decision under 32 C.F.R. § 1625.13. *Mulloy, supra.* However, it is obvious from the language of the regulations themselves that

*some* facts must be considered before a board can determine whether it will reopen the classification. 32 C.F.R. § 1625.2. Therefore, the rule in *Mulloy* only applies where the registrant has made a "prima facie case for reclassification." *Mulloy,* 398 U.S. at 416, 90 S. Ct. 1766. Here, as previously held, the facts presented to the board did not constitute a prima facie case for reclassification. Moreover, the board's consideration of those facts did not constitute a "de facto" re-opening of the defendant's classification, but constituted the mere initial determination of whether a prima facie case for re-opening had been stated. That determination was both proper and mandatory under 32 C.F.R. 1625.2.

### III

Whether the Local Board Improperly Failed to Advise the Defendant of the Appellate Procedure Authorized Under 32 C.F.R. § 1627.1 When the Appeal Board Affirmed the Local Board's Decision Without a Dissenting Vote.

■ The defendant was classified I-A on May 6, 1968 by his local board. He appealed to the Appeal Board which unanimously affirmed the local board's decision on August 28, 1968. The defendant concedes that he had no personal right to appeal the unanimous decision on August 28 under 32 C.F.R. § 1627.3. However, the defendant contends that it was error for the board not to inform him of the possibility of appeal under 32 C.F.R. § 1627.1. That section provides:

"(a) When either the State Director of Selective Service or the Director of Selective Service deems it to be in the national interest or necessary to avoid an injustice, he may appeal to the President from any determination of an appeal board. He may take such an appeal at any time."

It is thus apparent that the right to appeal under § 1627.1 belongs to the Director and not to the registrant. It is only necessary that a registrant be informed of his own rights, not those of others.

After the preceding series of requests for deferments was denied, John Oliver Chalker's odyssey through the Selective Service System continued with a notice to report for induction on January 27, 1969. Whereupon, the defendant requested and was granted a transfer of induction from his local board in Lakeland to Marianna, Florida, where the defendant was then residing. Consequently, the date for reporting for induction was postponed by the transfer to February 25, 1969. On February 20, the local board was informed by the State Headquarters that the defendant's wife had written a letter to the President of the United States. The defendant's induction date was again postponed. The letter set out many facts which had previously been before the board and also stated that Mrs. Chalker's previous husband had been killed in a plane crash while in the military. On March 11, 1969, the board found that this information did not warrant a reopening of the defendant's classification. These findings were forwarded to the State Headquarters and the defendant was ordered to report for induction on March 18, 1969.

The defendant failed to report on March 18. On April 17, the defendant was reported as a delinquent and the file was thereafter turned over to the United States Attorney's office. On September 24, 1969, the United States Attorney declined prosecution for further administrative handling.

The defendant was ordered to report to his local board for induction on November 10, 1969. On November 7, the local board received a letter from the defendant stating that he would not report and requesting a conscientious objector classification. On November 10, 1969, the defendant was sent a Selective Service System form 150 entitled "Special Form for Conscientious Objector," which the defendant completed and returned. On March 30, 1970, the local board informed defendant that the information received did not warrant a reopening of his classification because the board felt the defendant was not sincere in his claim. The defendant's file was forwarded to the State Headquarters at their request. In its letter accompanying defendant's file to State Headquarters, the local board stated: "The board feels that the registrant has effectively evaded the draft by his concerted efforts to avoid induction during his draft age years." Shortly thereafter, the case was again referred to the United States Attorney's office and this prosecution was instituted.

## IV
### The Conscientious Objector Claim

The defendant contends that the local board committed numerous errors in its handling of the defendant's conscientious objector claim which consequently deprived the board of jurisdiction and rendered its order to report for induction void.

The defendant sets forth three contentions the merit of which all depend upon whether the defendant's request for reclassification stated a prima facie case. These contentions are: 1) That the local board improperly refused to reopen the defendant's classification; 2) That the local board in fact did reopen the defendant's classification in a *de facto* manner, thereby improperly denying defendant his right to appeal; and 3) That the local board failed to give any valid reasons for its refusal to reopen the defendant's classification.

The defendant did not request reclassification as a conscientious objector until after he had received his notice to report for induction. 32 C.F.R. § 1625.2(b) provides in part:

" . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

**934**

■ The scope of what constitutes a prima facie case for reclassification after the registrant has received his order to report for induction is limited. In order for there to be a prima facie case at such a late date, the status of the registrant must have been changed by circumstances beyond his control.

■ It is clear from facts submitted by the defendant himself that whatever conscientious objections he may have possessed crystallized some time prior to the issuance of his draft notice. The defendant's statements indicate that his conscientious objections had crystallized while he was in college as a result of his association with several of his professors. The defendant had not been in college for almost two years when he received his notice to report. In such a case the registrant's status was not changed by "circumstances beyond his control." United States v. Adams, 449 F.2d 122 (5 Cir. 1971). Accordingly, the defendant established no prima facie entitlement to conscientious objector status. Consequently, the defendant's argument asserting procedural errors in the handling of his request for reclassification is totally without merit under the doctrines enunciated in *Mulloy, supra* and *Stetter, supra.*\*

Moreover, the decision of the Supreme Court in Ehlert v. United States, 402 U. S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), indicates that the local board need not have considered the defendant's request for a consicientious objector classification even if his beliefs had crystallized *after* his induction order was issued. See also, United States v. Adams, supra.

The order issued by the local board on October 31, 1969, directing the defendant to report for induction on November 10, 1969, was valid.

---

\* It should be noted that the local board did, nevertheless, give a "reason" for the denial of the defendant's claim, i. e., insincerity. That reason would be suf-ficient under the *Broyles* and *Stetter* rules in light of the abundance of evidence in the defendant's file which tends to support that finding.