**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Stephen Dana ROBERTS, Defendant-**
**Appellant.**

**No. 26944.**

United States Court of Appeals,
Ninth Circuit.

Feb. 15, 1972.

---

Eldon H. Reiley (argued), Spokane, Wash., for defendant-appellant.

Carroll D. Gray, Asst. U. S. Atty. (argued), Dean Smith, U. S. Atty., Spokane, Wash., for plaintiff-appellee.

Before KILKENNY and TRASK, Circuit Judges, and BYRNE,* Senior District Judge.

TRASK, Circuit Judge:

This is an appeal from a judgment of conviction for refusal to be inducted, a violation of 50 U.S.C. App. § 462. We affirm.

The following facts, stated first in summary fashion constitute the framework for the issues raised by appellant Roberts. On September 12, 1967, Roberts filed SSS Form 150 (Application for Conscientious Objector Status) which form he requested on August 30, 1967, when he submitted Form 100, Classification Questionnaire. The Board asked Roberts to appear on March 18, 1968, for a courtesy interview to discuss his request for an exemption from both combatant and non-combatant training and service. On that day, the Board classified Roberts I-A, and filed a Report of Oral Information, which stated the reason for the denial of the C.O. claim.

"Both Mr. Majer and Mr. True felt he was not sincere in his claim and recommended classification in I-A."

Before Roberts' appeal from this classification was processed, he was reclassified in a lower priority classification, II-S, pursuant to his request and information which the Board received from

* Honorable William M. Byrne, Senior United States District Judge, Central District of California, sitting by designation.

Roberts' college. The II–S classification expired on October 1, 1968. Nothing more was presented to the Board until January 21, 1969, when Roberts was again classified I–A. An appeal was timely filed, but on February 24, 1969, and before the file was forwarded to the Appeal Board, Roberts submitted a second SSS Form 150 and a letter attesting to his sincerity. On March 18, 1969, after his appearance at a courtesy interview that same day, Roberts filed a 22 page handwritten statement purporting to state his personal development and beliefs.

The Local Board considered the new information on April 15, 1969, but refused to reopen Roberts' classification. On April 21, 1969, the entire file was forwarded to the Appeal Board which also classified Roberts I–A. An induction order issued in due course, and Roberts refused to report. This prosecution and conviction followed. Following the trial, the lower court ordered a competency hearing to determine whether Roberts had been competent at the time of the trial. An order affirming him competent was entered. We affirm.

### The First I–A Classification and the First Conscientious Objector Application

In his original classification questionnaire he claimed to be a conscientious objector and requested the Board to furnish him with the special form (SSS 150) for filing the claim. His answers to the questions asked on his classification questionnaire are illuminating. First, he claimed no disqualifying disabilities for military service such as an ordination in the ministry or student in preparation for such; marriage or fatherhood; an adverse court record; an agricultural occupation; or a status as sole surviving son. In response to the questions under "Physical Condition" as to whether or not he had any mental or physical condition which in his opinion would disqualify him for military service, he stated, "That I disapprove (sic) of taking orders from the armed forces."

He stated that he was self-employed and described that employment as follows:

"I make shrunken heads of Lyndon Johnson out of plaster of paris and psychedelic book bags."

His request for the SSS 150 Form was promptly met and he returned it promptly. In response to the question asked there, "Do you believe in a Supreme Being?", he answered, "None of your business." He answered the question inquiring under what circumstances he believed in the use of force by saying:

"When somebody either exerts external force upon me or when an authority exerts external force upon those senses of values of which I identify."

Question number 6 asked him to describe the actions and behavior in his life which in his opinion most conspicuously demonstrated the consistency and depth of his religious convictions. He responded:

"I threw eggs at General Eisenhead S.A.C. during Spokane Lilac Festival. I leafleted the Spokesman Review, the Draft Board, Spokane Induction Centers, U.S. Post Office, and all the down town Banks."

The last questions requested names of persons who could supply information as to the sincerity of his professed convictions against participation in war. He wrote simply,

"I am not a pacifist."

There were other suggested questions attached to the form regarding his claimed conscientious objection. He did not answer them.

In due course the Local Board asked Roberts to appear for a courtesy interview. He did appear and at the conclusion, a Report of Oral Information was filed by the Board in which it was concluded that he was not sincere and the recommendation for I–A classification was made. It seems clear that the classification of I–A and the rejection of the I–O Claim did have a basis in fact

and the reasons stated were sufficient. United States v. Haughton, 413 F.2d 736 (9th Cir. 1969).

Although Roberts appealed, the appeal was not processed because he was reclassified in a lower priority classification (II–S) at his request and upon information the Board received from his college. This classification expired on October 1, 1968. Nothing more was presented to the Board until January 21, 1969, when Roberts was again classified I–A. An appeal was timely filed but before the file was forwarded to the Appeal Board, Roberts submitted a second SSS 150.

### The Second I–A Classification and the Local Board's Refusal to Reopen

On the date the second I–A classification was made, the file was in the same condition as it was when he was first classified I–A on March 18, 1968. The only intervening event was his student deferment and its routine expiration. The same basis in fact existed for the second I–A classification as existed for the first. The same stated reasons of the Local Board applied. Roberts appealed from the second classification of I–A on February 14, 1969.

Before the file was forwarded a second SSS 150 Form requesting conscientious objector status was filed. On the same date a letter attesting to his sincerity was also filed.[1] Although Roberts requested a personal appearance, the request was not within thirty days of the date upon which the Local Board mailed his notice of classification to him, 32 C. F.R. § 1624.1, and the request was denied. Nonetheless, he was told he would be given a courtesy interview. He was notified in advance of the date and what materials might be presented. He appeared on March 18, 1969, and stated that he had written what he called his personal development, but had forgotten to bring it.[2]

In answer to specific questions he stated that he was opposed to war in all forms; that his objections were based upon religious training and belief and that were he to be classified as a conscientious objector he would accept civilian work for 29 months. He was told that the Local Board would consider his claim at its April meeting and notify him of its decision. The notice, dated April 15, 1969, stated that the Board had carefully considered the new information submitted, but that it "was their unanimous opinion that the information in your file did not warrant reopening of your classification." The file was then forwarded to the Appeal Board which reviewed the file and classified the appellant as I–A.

It is clear that the appellant considers the entire Selective Service File as pertinent to the appeal since procedural error is asserted as to the first I–A classification. It is also clear that the Local Board took the same view since it declined to reopen on the basis of "information *in your file*." (Emphasis supplied) We have made a similarly comprehensive examination to determine whether the new factual allegations constitute a prima facie case for reopening. They do if they constitute a nonfrivolous, prima facie claim for a change in classification based on new factual state-

1. The letter was dated November 30, 1968, but bears the notation that it was handed over the counter. It was addressed "To Whom it May Concern" and filed February 24, 1969. The letter is as follows:

   "To Whom it May Concern:

   "I have known Stephen Roberts for about fifteen years. I know him to be of high moral character. He was raised to have highest regard for human life and has expressed a position of conscientious objection to war as a result of religious training and belief. For a period of time I was his Sunday School teacher.

   "His arrival at a position of ruling out war as a way of resolving human conflict has come about as a natural result of his own clear thinking as well as a loving and religious upbringing.

   "Yours very truly,
   "Alan H. Selker (signature)
   "A. H. Selker"

2. He returned to his home later in the day and obtained and filed it with the Clerk of the Board. It was duly considered.

ments which are not conclusively refuted by other information in the file. Mulloy v. United States, 398 U.S. 410, 416, 418, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); Miller v. United States, 388 F.2d 973 (9th Cir. 1967).

█ There were four questions asked about his religious training and belief. He answered two and left two blank with the notation "see enclosed." Nothing was enclosed with the application. He stated that he could not participate directly or indirectly in the act of killing. His second answer explains that he has no restrictions by reason of religious belief from ministering to sick and injured persons unless they are to be returned to military service.

The document that he referred to as his "Personal Development" is a 22 page rambling and somewhat allegorical tracking of registrant's life cycle from infancy, through youth and to his present state of maturity. Much of it has little relevancy to the inquiries which Form 150 makes. Some of it does. The values which he has learned along the path of life he summarizes as primarily "good sportsmanship, citizenship and fair competition."[3] On April 15, 1969, when the Board had before it the registrant's entire file, it had this material plus the material in his first application and in his classification questionnaire.

Considering the limitations upon judicial review in this situation we cannot say that the Board's conclusion not to reopen was clearly erroneous, because the Board could well have considered that the new claims were conclusively refuted by the other material in the file. Mulloy v. United States, *supra*, 398 U.S. at 416, 418 & n.7, 90 S.Ct. 1766.

### Appeal Board Action

The Appeal Board reviewed the registrant's second I–A classification. As of the date of the appeal, the action of the Board was clearly correct. The second I–O application had not been filed when the I–A classification was appealed. The Appeal Board's decision was correct upon the same basis which supports the action of the Local Board's I–A classification. That is the only action the Appeal Board took. It did not purport to act upon the Local Board's refusal to reopen. The district court did review the action of the Local Board. It affirmed the refusal to reopen. We affirm the judgment of the district court.

---

3. It may have been difficult for the Local Board to understand how he could give expression to these values, if they were sincere, by throwing eggs at a S.A.C. General during a civic parade, as he had said in his first conscientious objector application.