**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bruce Newton COALE, Defendant-Appellant.**

**No. 74–1959.**

United States Court of Appeals, Ninth Circuit.

Nov. 15, 1974.

Stephen Bedrick (argued), Oakland, Cal., for defendant-appellant.

Joseph E. Reeves, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit ' Judges, and SMITH,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

Coale was convicted of failure to report for induction into the armed forces in violation of 50 U.S.C.App. § 462(a), and he appeals. We affirm.

Shortly after registering with his Selective Service board on June 11, 1970, Coale indicated on Series XI of his Classification Questionnaire that he thought that he had a disqualifying mental condition, a "psychological problem." The board classified him I-A on July 14, 1971. The board later ordered Coale to report for preinduction physicals on two different dates, but Coale failed to appear. Thereafter, in October 1971, Coale wrote the board a letter indicating that he had psychological problems and submitted two letters from psychologists in support of his claim for disqualification. In brief, the letters describe Coale as psychoneurotic with phobias and learning disabilities [1] and as suffering from a hyperkinetic syndrome with psychological deficiencies which prevented him from performing normally in school.[2]

On November 2, 1971, the clerk of the board forwarded these two letters to the

---

* The Honorable Russell E. Smith, Chief Judge, United State District Court for the District of Montana, sitting by designation.

1. On October 22, 1971, the board received a letter from a clinical psychologist who had treated Coale once a week for ten weeks in 1959, when Coale was seven years old. In pertinent part that letter states:

> At that time, Bruce [Coale] was a disturbed child who could be classified as psychoneurotic with phobias and learning disabilities as his most prominent symptoms.

2. On October 20, 1971, the board received a letter from the director of a "learning institute" which had psychologically tested Coale in July 1969. In pertinent part that letter states:

> At the time of testing, we noted Bruce Coale as a mentally alert young man of superior general intelligence but a hyperkinetic syndrome with its consequent difficulties in self-control, frustration tolerance, concentration, visuo-motor coordination and visual language symbols prevented any academic success during his school years. This with maternal pressure for academic performance aggravated the problem. It was our feeling that Bruce needed psychological counseling concurrently with prescriptive academic assistance. These recommendations were not followed through.

board's medical advisor. The medical advisor determined that Coale was not disqualified from military service under the standards set out in Local Board Memorandum ("LBM") 78, and recommended that Coale be sent for a regular pre-induction physical examination. Twice more Coale was ordered to appear for physical examinations but did not appear. On May 15, 1972, the board ordered Coale to report for induction on June 20, 1972. This prosecution resulted because Coale failed to report. At no time before issuing the induction order did the board members themselves consider the two letters from psychologists or Coale's claim for a medical disqualification.[3]

Coale makes two arguments for reversal. First he contends that the two psychologists' letters established a prima facie claim for medical disqualification from military service under Army Regulation ("AR") 40–501.[4]

■ Where a registrant presents to his local board a prima facie claim for reclassification, on medical or other grounds, the board must reopen his classification. United States v. Cantero, 9 Cir., 1972, 471 F.2d 1190 (in banc); United States v. Sigler, 9 Cir., 1972, 471 F.2d 1191 (in banc); United States v. Miller, 9 Cir., 1972, 455 F.2d 358. Reopening provides the registrant with the important rights of personal appearance and administrative appeal. Mulloy v. United States, 1970, 398 U.S. 410, 415, 90 S.Ct. 1766, 26 L.Ed.2d 362. A registrant establishes a prima facie claim by making "non-frivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested classification." *Id.* at 416, 90 S.Ct. at 1771.

Apparently applying the medical disqualification standards set out in AR 40–501, the district court held that the two letters describing Coale's condition did not establish a prima facie claim. We do not pause to reexamine that determination, for we conclude that AR 40–501 was no longer the applicable standard when the board acted in this case. Rather, LBM 78, as amended on August 10, 1970, provided the relevant list of medical conditions that would justify disqualification by action of the local board. We base our conclusion on the Selective Service System regulations as they stood at times relevant to this case.

.   .   .   .   .

3. On May 26, 1972, eleven days after the issuance of Coale's order to report for induction, the board members did review Coale's file but declined to reopen his classification, apparently on the grounds that Coale had not met the stringent burden imposed by regulation on a registrant who requests a reopening after an order to report for induction has issued. 32 C.F.R. § 1625.2 (1972). *See, e. g.,* United States v. O'Neill, 9 Cir., 1973, 476 F.2d 295, 296. However, because we do not rely on this review as curing any alleged procedural irregularities, the post-induction-order actions of the board are not pertinent to our disposition of this case.

4. Appellant relies upon four separate categories of disqualification listed in Chapter 2 of AR 40–501, entitled Medical Fitness Standards for Appointment, Enlistment, and Induction:

   2–33.
   a. *History of psychoneurotic reaction* which caused—

   (2) Prolonged care by a physician.
   .   .   ., or
   (4) Symptoms or behavior of a repeated nature which impaired school or work efficiency.

   2–34.
   b. *Character and behavior disorders* where it is evident by history and objective examination that the degree of immaturity, instability, personality inadequacy, and dependency will seriously interfere with adjustment in the military service as demonstrated by repeated inability to maintain reasonable adjustment in school, with employers and fellow-workers, and other society groups.

   2–34.
   d. *Specific learning defects* secondary to organic or functional mental disorders.

From March 19, 1963,[5] until December 9, 1971, 32 C.F.R. § 1628.1 outlined the basic procedure for determining medical disqualification as follows:

The Surgeon General of the Department of the Army shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces. A medical interview of certain registrants by the medical advisor to the local board shall be accomplished for the purpose of screening and disqualifying at the local board those registrants who have conditions or defects enumerated in the list.

On December 9, 1971, Part 1628 of 32 C.F.R. was revised to establish new procedures for referring registrants to an Armed Forces Examining and Entrance Station ("AFEES") for medical examinations.[6] That amendment, however, did not disturb the reference in § 1628.1 to the Army Surgeon General's list pertinent to this case.[7]

From August 30, 1963, until August 10, 1970, LBM 78 linked AR 40–501 to § 1628.1 as follows:

Section 1628.1 of the Selective Service Regulations provides for a medical interview of certain registrants by the medical advisor to the local board for the purpose of screening at the local board without an armed forces physical examination registrants who have medical conditions or physical defects that disqualify them for service in the Armed Forces which appear in a list thereof approved by The Surgeon General of the Department of the Army. That list is set forth in Chapter 2 of Army Regulations No. 40–501 entitled "Medical Fitness Standards for Appointment, Enlistment, and Induction."

However, on August 10, 1970, the Director of the Selective Service System amended LBM 78 to delete all reference to AR 40–501 and to provide a revised list of "obviously disqualifying" conditions that would justify medical disqualification by the board without a physical examination at AFEES.[8]

That amendment in effect distinguished the rough medical guidelines that a local board was to apply in classifying registrants on its own initiative from

---

5. 28 Fed.Reg. 2616 (1963).

6. 36 Fed.Reg. 23380 (1971).

7. As revised, 32 C.F.R. § 1628.1(c) (1972) provided:

Based on lists of various medical conditions or physical defects that disqualify registrants for service in the armed forces, as may be issued from time to time by the Surgeon General of the Department of the Army, the local board, under such rules and regulations as the Director of Selective Service may prescribe shall determine whether a registrant who has or who may have such disqualifying medical condition or defect shall be delivered for an armed forces examination.

8. As amended, LBM 78 provides:
1. Selective Service Law specifies that the Secretary of Defense determines standards of acceptability of each registrant for military service. Authority has been delegated to the Selective Service System to find a registrant not qualified, where the disqualifying defect is manifest, without examination at an Armed Forces Examining and Entrance Station. When the registrant's con-

dition is not sufficiently manifest for the local board to act on its own initiative, it may seek advice from the Medical Advisor or, if appropriate, process the registrant for a medical interview in accordance with Part 1628 of the Selective Service Regulations. If no Medical Advisor is available, the registrant must be sent to the Armed Forces Examining and Entrance Station.
2. Conditions considered by the Surgeon General of the Army to be obviously disqualifying for enlistment or induction follow: [listing various conditions].
3. There are other conditions which would not be obvious but which upon receipt of valid documentary evidence, can be evaluated by the Medical Advisor, without referral to the Armed Forces Examining and Entrance Stations. Examples of these conditions are: [listing various conditions].
4. The Medical Advisor to the local board shall not perform complete examinations or do diagnostic adjuncts such as X-ray and laboratory service.
5. When in accordance with provisions of the Memorandum, the registrant's condition is found to be sufficiently disqualifying, the local board should place him in class IV–F.

the more detailed and stringent medical standards that the Army was to apply in examining registrants for acceptability at AFEES. Indeed, this court has previously had occasion to notice another aspect of the distinction in functions between the local board and AFEES. "While medical acceptability may be determined by AFEES [citations omitted], classification [may] not." United States v. Miller, *supra,* 455 F.2d at 360. Thus we conclude that, after the amendment to LBM 78, the local boards were charged with making medical disqualification determinations only in cases of certain obviously disqualifying conditions listed in LBM 78 as revised.

We do not view our earlier decisions in United States v. Coleman, 9 Cir., 1973, 478 F.2d 1371, and United States v. Levy, 9 Cir., 1972, 469 F.2d 345, as inconsistent with this conclusion. Those cases involved registrant claims for medical disqualification under AR 40–501 where the challenged local board actions preceded the August 10, 1970, amendment to LBM 78 which supplanted the AR 40–501 list of disqualifying conditions. Hence those cases properly applied the standards of AR 40–501, which were then still in effect. That both prosecutions were based on refusals to submit to induction which occurred after the LBM 78 amendment is immaterial. Neither case mentions nor had occasion to consider the amendment.

■ Under the list provided by the amendment to LBM 78, which is much shorter and narrower than that in AR 40–501, Coale failed to establish a prima facie claim for medical disqualification. The only grounds for psychological disqualifications listed in LBM 78 are

idiocy, imbecility, and "[m]ental derangement, with commitment or authentic medical history of medical derangement without commitment." [9] We therefore hold that Coale's local board did not err in failing to reopen Coale's classification because the two psychologists' letters did not establish a prima facie claim for disqualification under amended LBM 78.

■ Next, appellant argues that, even if the psychologists' letters did not establish a prima facie claim, the local board's failure even to consider the letters dictates reversal under United States v. Kelly, 9 Cir., 1973, 473 F.2d 1225.[10] *Kelly* reversed a conviction for failure to submit to induction because the local board had failed to consider a letter written to the board in support of the registrant's claimed high school deferment. The opinion declares broadly that local board clerical personnel must forward all "relevant communications from or concerning registrants" to the members of the board for their consideration. 473 F.2d at 1227.

Although the broad language of *Kelly* seems to dictate reversal in this case, our disposition here is controlled by the more recent decision of this court in United States v. Davis, 9 Cir., 1973, 484 F.2d 937. There, the registrant had submitted a letter of a doctor which stated that four years earlier the registrant had suffered a fracture of his right femur and the consequent atrophy of his leg muscles. Although severe muscular atrophy was a disqualifying condition under the then applicable AR 40–501 standards, the court held that Davis failed to establish a prima facie case because he failed to submit evidence of a current condition. The court fur-

9. LBM 78, as amended August 10, 1970, §§ 2(r), (s), and (v), respectively.

10. Although both the appellant and the *Kelly* opinion frame this issue in terms of a violation of procedural due process, we think it improper to invoke constitutional principles here. Rather, we view the question to be whether Coale's local board violated the Selective Service System regulations which stated: "The local board will receive and consider

all information, pertinent to the classification of a registrant, presented to it." 32 C.F.R. § 1622.1(c) (1971). *See Kelly, supra,* 473 F.2d at 1227. The board was legally obligated to follow the regulations. If it did not, its action was invalid. We should decide cases of non-constitutional grounds if such grounds exist. Not every error committed, either by a court or by a Selective Service board, is of constitutional dimension.

ther held that, because the registrant failed to present a prima facie case, there was no prejudice in the board's failure to consider the letter from the doctor. *Accord,* United States v. Johnson, 9 Cir., 1972, 473 F.2d 677, 678; United States v. McKinley, 9 Cir., 1971, 447 F.2d 962, 964. *Davis* distinguished *Kelly* as a case which involved a prima facie claim for reclassification. *Davis, supra,* 484 F.2d at 938 n. 2. *See also* United States v. Bingham, 9 Cir., 1973, 484 F.2d 365, 366 n. 1; United States v. Thrower, 9 Cir., 1973, 483 F.2d 283, 285.

Were we considering this case in the light of *Kelly* alone, without the intervention of *Davis,* we would be inclined to reverse. However, we are bound by *Davis,* which presents a close factual analogy to the case before us. Coale, like Davis, asserted a medical condition that clearly fell short of establishing a prima facie claim for disqualification. Under the rule of *Davis,* the failure of the local board to consider Coale's insufficient claim resulted in no prejudice.

Affirmed.