UNITED STATES of America,
Appellee,

v.

Kevin Thomas FORD, Defendant,
Appellant.

No. 7562.

United States Court of Appeals,
First Circuit.

Oct. 6, 1970.

W. Wright Danenbarger, Manchester, N. H., by appointment of the Court, with whom Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N . H., was on brief, for appellant.

William B. Cullimore, Asst. U. S. Atty., with whom David A. Brock, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a judgment of conviction by the district court for wilfully refusing to submit to induction. 50 U.S.C. App. § 462(a). Appellant was first ordered to report for induction on July 16, 1968. Through a mistake in dates he reported a day late; his local board excused him and postponed his induction date to August 15. Appellant duly reported but, having in the meantime been arrested on a charge of being in the presence of marijuana, a "moral waiver" was required. Army Reg. 601–270, ¶¶ 3–9. The waiver was issued [1] and the board ordered appellant to report for induction on September 18. It is appellant's failure to report on this date which led to his prosecution and conviction.

While appellant raises a number of issues relating to local board procedure and trial, of chief concern to us are two letters received by the board on July 17 [2] from two doctors concerning appellant's mental and emotional disorders. One, from appellant's local doctor of some years, stated that appellant was deeply disturbed, with neurotic depression and anxiety, was a chronic user of drugs, that induction might have "severely destructive" results, and that further psychotherapy was being arranged. The second letter, from a Boston psychiatrist to whom appellant had been referred, reported observations made after a number of visits and psychological testing. His conclusion was that appellant had a pathological personality condition, that he should have long term therapy, and that military service would harm appellant and possibly others. These letters were not brought to the attention of the

board but were, in August, sent by the clerk to the Armed Forces Examining and Entrance Station (AFEES) where they were stamped as "Received and Considered", at the time when an Army psychiatrist, after an office interview, found appellant acceptable for induction. [3]

Appellant contends that the September induction order was invalid because the local board did not at any time consider the contents of these letters received prior to the date of that order. He argues that the use of a procedure which does not afford the local board the opportunity to consider whether to reopen a registrant's classification, based on letters received by the board whose contents present a nonfrivolous case for such a reclassification, vitiates a subsequent induction order.

The district court cited Selective Service regulation 32 C.F.R. § 1625.2 which says that a local board "may reopen and consider anew the classification of a registrant * * * based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification." It observed that this was permissive, not mandatory, and noted as even more important the fact that the letters did go forward with the file to AFEES where appellant was given a special psychiatric examination. It saw no violation of due process.

The matter is, we feel, more complex. That the board is given wide discretion whether or not to reopen a case is obvious. But it is far from obvious that a clerk should have the power to determine what the board should see as a basis for exercising its discretion. We can

---

1. The waiver, it appears, was erroneously issued on the basis of misinformation. This error is asserted as another ground for reversal but on the view we take of the case requires no further discussion.

2. While the letters were received by the board subsequent to the sending of the first order to report, they antedated the sending of the third and critical induction notice of September 3 by six weeks.

They cannot, therefore, be considered as "post-induction order" information.

3. Following this examination, appellant was ordered to report on September 18 but did not, having voluntarily entered a Connecticut mental hospital at the urging of his doctor and family. He was discharged a month later. On January 6, 1969, appellant's case was reported to the U. S. Attorney for prosecution.

readily conceive of a case in which the facts supplied to a local board about a registrant might demonstrate a dramatic change in the dependency of his family or in his own physical condition. In such a case we doubt that a board could justify its failure to reopen on the ground that the clerk had chosen not to submit the vital new information to it. If the reposing of discretion in the board is to have meaning and substance, it must be that the facts prerequisite to the exercise of judgment should come to its attention.[4] We find such an analysis implicit if not explicit in *Mulloy v. United States,* 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). Although the registrant in that case made a written request for a reconsideration of his classification and no such request was made here by appellant, the Court's resolution is directly relevant to our situation. Under 32 C.F.R. § 1625.2 there are two events which can trigger a reopening of a registrant's classification: (a) a written request by persons within certain categories;[5] or (b) action by the board itself. Both sections require the same quantum of evidence to support a reopening, i. e., "facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification." 32 C.F. R. § 1625.2. The Court in *Mulloy* considered the operations of the first triggering device, the written request by a registrant. It pronounced the following standard:

"Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the Board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file." 398 U.S. at 416, 90 S.Ct. at 1771.

■ The motivating consideration behind the Court's circumscribing of local board discretion in reopening classifications is that there is a critical difference between a simple refusal to reopen and reopening followed by a decision not to alter the registrant's classification. Once the local board reopens, it is required by regulation to "consider the new information which it has received and [to] again classify the registrant in the same manner as if he had never been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened." 32 C.F.R. § 1625.11. As a result of this new classification the registrant is guaranteed both the right of personal appearance before the local board and the right of appeal from its determination. 32 C.F.R. § 1625.13. The effect of a board's failure to reopen upon receipt of new information is a denial of these essential procedural rights. A local board may refuse to reopen, therefore, only "where the claim is plainly incredible, or where, even if true, it would not warrant reclassification, or where the claim has already been passed on, or where the claim itself is conclusively refuted by other information in the applicant's file." 398 U.S. at 418, n. 7, 90 S.Ct. at 1772.

■ We see no logical basis for differentiating between cases where the registrant files a request based on nonfrivolous grounds and those where, from other sources, information of equivalent weight is supplied. In either case

---

4. Even if the letters were thought to be received *after* the order to report for induction was mailed, the board can reopen if it "specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control", 32 C.F.R. § 1625.2. We would assume that in this circumstance the board should have ac-

cess to the facts before it made its decision as to a change in status.

5. Including the registrant, the government appeal agent, any person claiming to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment.

"whether or not a reopening is granted is a matter of substance". Mulloy v. United States, *supra* at 415, 90 S.Ct. at 1770. It might well be that the registrant is incapacitated, physically or mentally incapable of acting for himself, or so deluded or misled as not to be able to appraise his own condition. Indeed, the report of a responsible doctor with ample opportunity to diagnose a registrant might be more credit-worthy than the request of the registrant himself. This does not mean that every request or any information rises to the level where reopening is required. But the board must at least make the assessment as to whether "nonfrivolous allegations of facts" of sufficient significance were presented. If it concludes that the contents of the correspondence meet this standard, it must reopen the classification and afford the registrant the procedural rights provided by regulation. As we cautioned in United States v. Stoppelman, 406 F.2d 127, 130 (1st Cir. 1969), cert. denied 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769, where we dealt with a far less pertinent communication, "* * * clerks file such communications without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings."

In the case at bar, the information in the doctors' letters not only evidenced apparently serious and competent medical advice based on adequate opportunity to observe, but contained statements of professional opinion which could have entitled appellant to a different classification.[6] The failure of the board to consider the letters is not, as the district court thought, cured by the subsequent special psychiatric examination conducted by the Army, since appellant at this point had been denied his rights to appear and appeal within the Selective Service system. This deprivation of procedural rights was such that the final order to report for induction was invalid and appellant's conviction cannot stand. Mulloy v. United States, *supra.*

Accordingly, we do not consider the appellant's further contentions concerning other practices of the local board, Selective Service headquarters and AFEES. Nor must we resolve the question of appellant's intent in failing to report for induction. Let it suffice to say that the lodging of broad discretion in local Selective Service boards carries the concomitant duty of its exercise and that such exercise is predicated upon consideration of available information.

Reversed.

---

6. The Army Regulations list as cause for rejection for induction personality disorders including the following:
 "a. *Character and behavior disorders,* as evidenced by
   (1) Frequent encounters with law enforcement agencies, or antisocial attitudes or behavior which, while not a cause for administrative rejection, are tangible evidence of an impaired characterological capacity to adapt to the military service.

 * * * * *
   (4) Drug addiction.
 b. *Character and behavior disorders* where it is evidence of history and objective examination that the degree of immaturity, instability, personality inadequacy, and dependency will seriously interfere with adjustment in the military service as demonstrated in school, with employers and fellow-workers, and other society groups." Army Regulation 40–501.