**UNITED STATES of America,**
**Appellee,**

v.

**Gary Wayne MATHEWS, Defendant,**
**Appellant.**

**No. 71–1208.**

United States Court of Appeals,
First Circuit.

Nov. 4, 1971.

Norman C. Ross, II, Brookline, Mass., by appointment of the Court, for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Gary Wayne Mathews was convicted in a jury-waived trial of refusing to submit to induction in violation of 50 U.S.C. App. § 462(a). On appeal, he contends that his local board erred in refusing to reopen his I–A classification when he requested a II–S classification,[1] that the Executive Secretary of the local board erred in not turning over to the members of the board his subsequent request for a I–S(C) classification[2] with supporting papers, and that the two years which elapsed between his refusal of induction and the bringing of the indictment denied him due process and a speedy trial in violation of the Fifth and Sixth Amendments. Because we conclude that the Secretary erred in failing to draw the attention of the board to the I–S(C) request and supporting papers, we need not address appellant's other contentions.

In September, 1966, appellant enrolled at the University of Texas in a program leading to a master's degree in zoology. The degree program required both course work and a thesis. Having completed his course work sometime during 1967, he began laboratory work for his thesis. He held a II–S classification from November, 1966, until July, 1968, when he was classified I–A. In an attempt to obtain another II–S deferment, he wrote to the board that he had finished taking courses but was still doing research for his thesis. The letter explained that his original research project had proven unworkable and that he was presently proceeding with a second. The board declined to reopen.

After receiving an induction notice in October, appellant applied for and was granted a transfer of induction from Texas to Cambridge, Massachusetts, and submitted to his local board a request for a I–S(C) deferment. In response, the Executive Secretary of the board wrote that "We do not have in your file SSS Form 103 [Graduate or Professional College Student Certificate] or suitable certification from your university regarding your student status this fall." Mathews then procured a letter from the Assistant Dean of the Graduate School indicating that "Mr. Gary Wayne Mathews has completed all requirements for the master's degree in Zoology except for the thesis", and a letter from the professor who was supervising his thesis stating that he was doing laboratory research.[3] The Executive Secretary of the board, acting on the advice of a military adviser to Selective Service State Headquarters, denied the request without bringing it to the attention of

---

1. The II–S classification, ordinarily renewable, is a student deferment and is granted to graduate students who meet the requirements of 32 C.F.R. § 1622.26.

2. The I–S(C) classification is a once-only student deferment which permits college and graduate students to complete the academic year in which they receive an induction order. It is granted under the conditions set forth in 32 C.F.R. § 1622.-15(b).

3. The letter stated, in part, that "Mr. Gary Mathews has been working on his M.A. degree at the University of Texas at Austin, under my direction, and is more than halfway towards completing it. He has finished all his course work (with, I might add, a very excellent academic record) and is now concerned with the research work required for this degree. Needless to say, an interruption at this time, will seriously hamper his ability to complete this work, and hense [sic] his degree."

the members of the board. Thereafter, Mathews refused to submit to induction.

In United States v. Ford, 431 F.2d 1310 (1st Cir. 1970), we held that when a registrant or someone acting in his behalf presents facts to the local board which might support reclassification, the secretary must bring those facts to the attention of the members of the local board. Only thus, we reasoned, can the members of the board determine whether the registrant has presented facts which entitle him to a reopening under the standards set forth in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). Both *Ford* and *Mulloy* involved interpretation of the Selective Service System's general regulation as to reopening, which provides for reopening upon presentation of "facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification. * * *" 32 C. F.R. § 1625.2. The present case involves instead the specific regulation which governs reopening when a request for a I–S deferment is made after the mailing of an induction order. Under its terms, the board must reopen "whenever facts are presented * * * which establish the registrant's eligibility for classification into Class I–S. * * *" 32 C.F.R. § 1625.3(b). In our view the two regulations serve similar functions despite differences in language. Each creates a procedural right, in that it directs the board, in a proper case, to "reopen and consider anew the classification." Neither contemplates that the board must grant the requested classification if it reopens. When 32 C.F.R. § 1625.3(b) is construed in this way, the registrant is entitled to a reopening if he presents facts which "establish" his eligibility not in the sense of conclusive-

ly proving it but rather in the sense of making out a *prima facie* case for it. The reasoning of *Ford* is, then, apposite as to this regulation as well: the board must be apprised of facts which might warrant a I–S(C) so that it can make the initial determination whether to reopen.

Up to this point, we are in substantial accord with the thoughtful opinion of the district judge on this issue.[4] Though holding that the duty of the Executive Secretary was to present facts relevant to Mathews' classification to the board, he concluded that the dereliction constituted harmless error beyond a reasonable doubt. The regulation under which Mathews sought the I–S(C) classification provides that "In Class I–S(C) shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning is ordered to report for induction. * * *" 32 C.F.R. § 1622.15(b).[5] The government's contention and the district court's holding were that "Under no rational construction of 32 C.F.R. § 1622.-15(b) could such vague, open-ended academic pursuits have been found to constitute the satisfactory pursuit of a full-time course of instruction at a university." It was in the context of this construction of the regulation that the district court concluded that the error was harmless.

In urging affirmance, the government argues, in effect, that Mathews has been enrolled in the master's program for too many years, that his research and writing do not constitute a "course of instruction", and that he is not working "full-time" on his research and writing. As to the first contention, we acknowledge at the outset that a feeling that

---

4. The decision is reported at 327 F.Supp. 1362 (D.Mass.1971).

5. The statute upon which this regulation is based states that "Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier * * *." 50 U.S.C.App. § 456(i) (2).

"enough is enough" is entirely understandable. The general public surely thinks of the M.A. as involving one or, at most two years of study. Supporting this reaction is the awareness that student deferments long resulted in class discrimination in favor of those wealthy enough to remain in school beyond the age at which men were customarily drafted.

■ The short answer to these qualms is that Congress and the Selective Service System chose other means to deal with the problem of graduate students whose never-ending search for truth enabled them to avoid military service altogether. In particular, the renewable graduate II–S deferment was, with minor exceptions,[6] eliminated. As we noted in Crane v. Hershey, 410 F.2d 966, 968 (1st Cir. 1969), the I–S(C) deferment cannot be so exploited. 32 C.F. R. § 1622.15(b) provides that "no registrant shall be placed in Class I–S[(C)] under the provisions of this paragraph (1) who has previously been placed in Class I–S[(C)] thereunder. * * * " The Congressional purpose in establishing the I–S(C) deferment was apparently to permit students to complete the academic year in order to avoid waste of teacher and student effort and of research funds and facilities.[7] This purpose provides no warrant for denying a I–S(C) deferment to a graduate student on the mere ground that he has been in graduate school for a longer period than his draft board or the layman would think appropriate. A graduate student "pursuing a full-time course of instruction" and not otherwise disqualified[8] is entitled to a deferment without limitation as to the number of years he has been in graduate school.

As for the government's argument that "course of instruction" comprehends only attendance at classes and thus excludes Mathews,[9] we grant that the phrase is not free of ambiguity. No court other than the court below has, to our knowledge, construed the phrase, nor has the Selective Service System issued explanatory memoranda. The suggested limitation—equating "course of instruction" with daily class attendance—would entail disruption of research and writing in mid-year. While the "academic year" as a significant unit may be less compelled in the context of thesis-related research and writing than in the context of classroom work, the guarantee that one will be permitted to continue until the end of the academic year permits one to plan his work in one-year blocks. A mid-year interruption will waste the educational resources of the same institutions whose resources are wasted by mid-year interruption of classroom work; a costly and complex scientific experiment may be aborted, to the detriment of both the university and the student.

■ Additionally, the government's interpretation of "course of instruction" would distribute deferments in an anomalous way, preferring students whose schools expect classroom and thesis work to be done concurrently while excluding even the most diligent among those whose schools expect class work and thesis to be done seriatim. In the face of multifarious graduate programs, the local boards and the courts would be forced to decide, without relevant stand-

---

6. See 32 C.F.R. § 1622.26, defining the class of those eligible for a graduate II–S, chiefly those in medicine and related fields and those who were enrolled in 1967–68. The latter group is entitled to a limited number of renewals depending upon date of entry into graduate school and type of degree sought.

7. See, e. g., Bowen v. Hershey, 410 F.2d 962, 966 (1st Cir. 1969); Nestor v. Hershey, 425 F.2d 504, 513, 138 U.S.App. D.C. 73 (1969).

8. For disqualifying conditions, see 32 C.F. R. § 1622.15(b).

9. The government does not, apparently, argue that the letters from the Assistant Dean and the professor were an inadequate substitute for SSS Form 103. Nor could such a contention be persuasive, since the Executive Secretary advised Mathews that he should submit "SSS Form 103 *or suitable certification* regarding your student status this fall." [Emphasis added.]

ards, what mixes of concurrent classroom and thesis work would qualify as a "course of instruction". Both Congressional policy and the anomalies which would result from the government's interpretation, then, persuade us that "course of instruction" should be read more broadly to include the classroom courses and laboratory or thesis requirements which together are prerequisites for a degree.

The government contends alternatively that the rules of the University of Texas are controlling. Of course, if the time had passed within which Mathews could submit his thesis and still qualify for the degree, the university rule would control in the sense that Mathews would be ineligible for the deferment because no longer enrolled in a degree program. But the local board had no evidence that this was the case, nor do we; the letters from the Assistant Dean and the thesis adviser strongly imply the contrary. Rather, the government relies on the statement of the Registrar of the University of Texas that "a graduate student, to be full-time, must take at least nine semester hours of upper division work, or be certified as full-time by the Dean of the Graduate School." Mathews was concededly not taking nine or more semester hours of courses. Assuming, *arguendo*, that the Assistant Dean's letter, even in conjunction with the letter from his thesis adviser, did not amount to certification of full-time status within the meaning of the rule, Mathews did not qualify under either branch of the rule.

The first problem with this contention is that there is no evidence that the University of Texas rule was promulgated to serve the purposes of the Selective Service System. Indeed, it is quite likely that the rule was designed for tuition, residency, and other intrauniversity purposes. Even if it was fashioned for the purpose of cooperating with the Selective Service System, however, the local board could not properly rely upon it. *Cf.* United States v. Mar-

tin, 3 SSLR 3229 (M.D.Tenn., Aug. 5, 1970). If it did so, a registrant at one school would be deferred while a registrant pursuing exactly the same course of instruction at another school would not, even though the two registrants would be similarly situated with respect to the Congressional policy of permitting students to complete the academic year. More narrowly, the government argues that since both the University of Texas and the appellant originally expected that his thesis would be completed by August, 1968, appellant is not entitled to a deferment beyond that date. This expectation does not even rise to the dignity of a university rule; the suggestion that Mathews is bound by it totally lacks support in the statute, the regulations or the policies which support them.

At oral argument, finally, government counsel expressed some doubt as to whether Mathews was engaged full-time in his laboratory work and thesis at the time of his induction. Counsel cited the fact that the address which Mathews gave to his draft board was not in Texas, but was in Cambridge, Massachusetts. On the other hand, Mathews claims to have been the recipient of a National Defense Education Act grant for the year in which he sought the I–S(C) classification. Under the terms of N.D.E.A. graduate fellowships, a recipient "shall continue to receive the payments \* \* \* only during such periods as the Commissioner finds that he is maintaining satisfactory proficiency in, and devoting essentially full time to, study or research in the field in which such fellowship was awarded, in an institution of higher education \* \* \*." 20 U.S.C. § 465. In addition, Mathews asserts that he paid laboratory fees to the University of Texas for that year. We need not resolve this factual dispute. Suffice it to say that the scholarship raises an inference of full-time status, that both Mathews and his adviser stated to the board that he was working on

his research,[10] and that he might well have been able to give a satisfactory account of his residency in Cambridge. Mathews was probably entitled to a reopening and may well have been entitled to a I–S(C) classification. It was not for the Executive Secretary summarily to conclude that the members of the local board need not even see his request.

Reversed.

10. Although Mathews' request for a I–S (C) classification did not reiterate the statements made in the August letter, the request can fairly be thought to incorporate them.