Carl Clifton BALLARD, Petitioner,

v.

COMMANDING GENERAL, FORT LEONARD WOOD, MISSOURI, and Elliot Richardson, Secretary of Defense, Respondents.

Civ. A. No. 19991–3.

United States District Court,
W. D. Missouri, W. D.

Jan. 5, 1973.
As Amended Feb. 21, 1973.

**144**

Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., Curry First, Milwaukee, Wis., for petitioner.

Vernon Poschel, Asst. U. S. Atty., Kansas City, Mo., for respondents.

## FINAL JUDGMENT AND ORDER GRANTING PETITION FOR HABEAS CORPUS WITHOUT PREJUDICE

### FACTS

WILLIAM H. BECKER, Chief Judge.

This is a petition and supplemental petition for federal habeas corpus by a member of the United States Army, presently on active duty at Fort Leonard Wood, Missouri, requesting a review of the legality of his induction. Petitioner prays for a judgment ordering his discharge from, the United States Army, on the ground that he was unlawfully inducted into military service. With his original petition for federal habeas corpus (filed by his Wisconsin counsel) petitioner filed (1) an "Emergency Motion for Temporary Restraining Order" to restrain respondents from removing

him from the jurisdiction of the Court, from "giving Petitioner any combatant orders" and "from ordering Petitioner to continue with 'active' or 'physical' basic training," (2) a "Motion for Discovery and Inspection" requesting production of petitioner's original "Selective Service file or Cover Sheet or for an exact copy thereof", (3) a "Motion" pursuant to Rule 52(a), F.R.Civ.P., requesting that the Court "find the facts specially and state separately its conclusions of law thereon" and (4) an "Emergency Motion for Permission to Proceed in Forma Pauperis and for Appointment of Counsel" with suggestions and an affidavit in support thereof.

On February 7, 1972, petitioner was granted leave to proceed in forma pauperis. The respondents were ordered to show why the petition for habeas corpus should not be granted and the Federal Public Defender for the Western District of Missouri was appointed to represent petitioner. On February 8, 1972, an order restraining respondents and all persons acting under their authority from removing petitioner from the jurisdiction of this Court was entered but petitioner's motion to restrain respondents from giving petitioner any combat orders or from ordering petitioner to continue with basic training was denied. Pursuant to leave granted by order dated February 10, 1972, petitioner filed his supplemental petition for habeas corpus stating allegations concerning his alleged exhaustion of administrative remedies. On February 25, 1972, petitioner, by his Court appointed counsel, filed his "Motion for Order Granting Writ of Habeas Corpus and Directing Petitioner's Immediate Release from Custody" on the grounds, among others, that respondents' failure timely to file their response to the order to show cause entitled petitioner to release.

A response to the order to show cause was filed by respondents on February 28, 1972. As a part thereof respondents filed (a) a copy of petitioner's Selective Service file (Respondents' Exhibit 1), (b) a copy of a letter dated February 19, 1971,

addressed to Department of the Army Examining and Entrance Station, Milwaukee, Wisconsin, from Dr. Harry B. Sadoff (Respondents' Exhibit 2) concerning an examination of petitioner's left foot and ankle,[1] and (c) copies of petitioner's medical records of proceedings by a United States Army Medical Board which was convened to evaluate the petitioner's physical condition after being inducted into the United States Army (Respondents' Exhibit 3). Respondents also filed an "Addendum to Response to Order to Show Cause." As a part of the "Addendum," respondents attached a copy of a pre-induction "Report of Medical Examination" (Respondents' Exhibit 4) dated February 19, 1971. Petitioner's traverse of the response to the order to show cause denies portions of the facts recited in the return to the order to show cause, accepts Respondents' Exhibit 1 as a correct copy of petitioner's Selective Service File and Respondents' Exhibit 2 as a correct copy of a letter from Dr. Sadoff, but objects to admission of Respondents' Exhibits 3 and 4 as being immaterial and irrelevant to the issues raised by the petition and because they "'do not purport to be an examination for purposes of determining eligibility for induction . . . .'" Petitioner apparently does not challenge the veracity of these two exhibits for in his traverse petitioner relies on a portion of Respondents' Exhibit 3 for his legal and factual contentions in support of the petition for habeas corpus.

In his original petition for federal habeas corpus, petitioner states the following as grounds for his contention that his induction into the United States Army was unlawful:

"19. The induction of petitioner was unlawful because his Order to Report for Induction (SSS Form 252), under which petitioner was inducted, was issued in violation of the Military Selective Service Act of 1967 and the Military Selective Service Act of 1971 and the rules, regulations, and directions issued pursuant thereto, all as more fully set forth in the following paragraphs.

"20. Petitioner's local board and the Milwaukee Armed Forces Entrance and Examining Station arbitrarily and unlawfully found petitioner medically qualified during and after petitioner's pre-induction physical examination during February, 1971 and petitioner's physical inspection during November, 1971, all in violation of Section 4(a) of the Military Selective Service Act and Chapter 2, Army Regulation 40–501, SSLR 2203.

"21. Petitioner's local board, the Wisconsin Selective Service System Headquarters, Milwaukee Armed Forces Entrance and Examining Station, and Headquarters, United States Army Recruiting Command, arbitrarily and unlawfully denied petitioner the registrant medical reevaluation and review.

"22. The Milwaukee Armed Forces Entrance and Examining Station and Headquarters, United States Army Recruiting Command, arbitrarily and unlawfully denied petitioner due process when his medical claim was improperly processed under Army Regulation 601–270, SSLR 2227.

"23. Petitioner's local board arbitrarily and unlawfully violated 32 CFR 1621.9 when it failed to mail petitioner's Classification Questionnaire (SS Form 100) to petitioner."

On November 3, 1972, a hearing was held with counsel for respondents and appointed counsel for petitioner to determine whether petitioner is entitled to immediate release from the United States Army on the basis of the record and pleadings in this cause. A copy of a partial proposed memorandum concerning petitioner's claim of denial of admin-

---

1. Dr. Sadoff concluded that "The applicant discloses some pain and discomfort in the left forefoot. He performs various manuevers as recorded under Motion. The above findings are not pathological, they are physiological at the present moment. On that basis I would qualify him for service."

istrative due process by the local board's alleged improper processing of petitioner's medical claim was provided counsel for discussion at the hearing. As a result of the hearing the following statement of facts was submitted by counsel for petitioner and is substantially agreed to by counsel for respondents. (The areas of disagreement will be indicated hereinafter).

On August 5, 1969, almost six months late, petitioner registered with Local Board 44, Milwaukee, Wisconsin. On the same date a classification questionnaire was filled in by typewriter with the assistance of a secretary or a clerk of Local Board 44 and signed by petitioner. In this questionnaire petitioner answered that he had a "bad ankle" which in his opinion would disqualify him from service, but he did not attach a physician's statement as requested in the printed form. Because petitioner had not previously registered, the classification questionnaire had not been mailed to him. Also on August 5, 1969, petitioner completed and filed a "Statement of Late Registrant" giving his reasons for late registration.

On September 15, 1969, petitioner was classified 1–A on the basis of the statements in the classification questionnaire.

On September 16, 1969, the Clerk of Local Board 44 mailed to petitioner notice of classification with "Advice of Right to Personal Appearance and Appeal" informing petitioner, among other things, of his right to ask for a personal appearance before his local board, to ask for an appeal to the State Appeal Board and that the request for a personal appearance before the local board or for an appeal must be made in writing to the local board within 30 days of September 16, 1969.

On December 23, 1969, the Executive Secretary of Local Board 44 prepared and signed a "Record of Induction", SS

Form 47, noting in "Section II–Local Board Medical Interview" petitioner's claim of "Physical Defects" as "Bad Ankle (not verified)." It was also noted therein that petitioner had not been referred to a Local Board Medical Advisor.

On February 3, 1970, an "Order to Report for Armed Forces Physical Examination" was mailed to petitioner directing him to present himself for an Armed Forces Physical Examination on February 18, 1970. On February 18, 1970, the petitioner reported as ordered for the Armed Forces Physical Examination. The medical examiner found petitioner acceptable, noting that petitioner's left ankle was "tender lateral area, sl weak, L2." [2]

On February 22, 1970, a "Statement of Acceptability" dated February 18, 1970, was mailed to petitioner notifying him that he was found fully acceptable for induction into the Armed Forces.

On November 30, 1970, a "Current Information Questionnaire" was mailed to petitioner, who filled out the questionnaire, signed it and returned it to Local Board 44 on December 3, 1970. In this questionnaire petitioner again claimed that his left ankle gave him trouble which, in his opinion, would disqualify him for service. Again petitioner failed to attach a physician's statement concerning his ankle.

On January 29, 1971, Local Board 44 mailed to petitioner an Order to Report for Induction at the Induction Center, Milwaukee, Wisconsin, on February 19, 1971. On February 19, 1971, petitioner reported for induction as ordered. He was then given another medical examination, as a part of which he was referred to and examined by an orthopedic specialist who concluded that while petitioner had some pain and discomfort in his left forefoot, he was qualified for service. On the basis of the medical and orthopedic examinations he was

2. Counsel for petitioner correctly claims that a rating of "L3" rather than "L2" in the physical profile would make petitioner currently unacceptable and require his classification to be 1–Y rather than 1–A under Army Regulation 601–270, §§ 4–20 (9) (b) and (9) (c).

found qualified for induction on February 19, 1971. After the orthopedic examination petitioner failed to return to the Induction Center to be sworn in and thereby evaded induction.

On February 26, 1971, the Executive Secretary of Local Board 44 mailed to petitioner a letter requesting petitioner to state, in the space provided on the letter, his reasons for leaving the "Induction Station." Petitioner failed to respond to the request.

On March 4, 1971, Local Board 44 mailed to petitioner a letter ordering petitioner to report at the same Induction Center for induction on March 19, 1971. Petitioner failed to report to the Induction Center as ordered. On March 19, 1971, the Executive Secretary for Local Board 44 mailed to petitioner a letter requesting his reasons for failing to report for induction. Petitioner failed to respond to the request.

Thereafter petitioner was indicted by a federal grand jury for failure to submit to induction. Petitioner's attorney obtained an agreement from the office of the United States Attorney for the Eastern District of Wisconsin to dismiss the indictment if petitioner would report for and submit to induction.[3] The Deputy State Director, Wisconsin Selective Service System, Mr. Roderick J. Lippert, advised Local Board 44 of petitioner's willingness to submit to induction by letter dated September 15, 1971. Mr. Lippert instructed Local Board 44 to order petitioner to report for induction by letter "as a continuation of the presently-outstanding order."

On October 12, 1971, a letter was mailed to petitioner by Local Board 44 ordering him to report for induction at the Milwaukee Induction Center on November 12, 1971.

On November 12, 1971, Local Board Memorandum No. 121 was in full force and effect. A copy thereof is attached as an addendum.

On November 10, 1971, Curry First, Esquire, petitioner's Wisconsin attorney, wrote to Mr. Lippert on behalf of petitioner requesting a medical reevaluation and review "pursuant to Local Board Memorandum 121 (issued June 25, 1971), Section IV Medical Reevaluation after Issuance of Order to Report for Induction." Petitioner's later appointed counsel states that petitioner's Wisconsin counsel Mr. First "maintains that he spoke with Rod Lippert . . . [on November 10, 1971] and obtained his agreement and commitment for Selective Service to accord petitioner a Registrant Medical Reevaluation and Review pursuant to Local Board Memorandum No. 121, Section IV, at the time petitioner appeared in response to the letter order of October 12." Counsel for respondents states that "Mr. Lippert maintains that he has no particular recollection of such a request, but that it would have been his practice if asked such not to have promised same." Under the conclusions of law stated hereinafter, the resolution of this factual issue is immaterial.

On November 11, 1971, Local Board 44 received from petitioner letter reports of physical examinations of his left ankle and feet by Jacques Hussussion, M.D., orthopedic surgeon, and Raymond C. Waisman, M.D. On November 11, 1971, Local Board 44 also received a letter from petitioner requesting that the local board "carefully review and consider" the letter reports by Dr. Hussussion and Dr. Waisman and advise him of their reasons if Local Board 44 did not reopen his classification.

On November 12, 1971, petitioner reported to the Induction Center as ordered. He was given a physical examination but was not referred to an orthopedic specialist. (As stated above he had been referred to an orthopedic spe-

3. Petitioner states that the office of the United States Attorney for the Eastern District of Wisconsin agreed to dismiss the indictment "if petitioner would sub- mit to induction in good faith, either if he were inducted or if he were found unqualified for induction."

cialist February 19, 1971, and found physically qualified by the specialist.) The letters from Dr. Hussussion and Dr. Waisman were received by the examining physician at the Induction Center. Petitioner was again found qualified for service. After being found qualified, he was sworn into the United States Army.

Petitioner was not given a Registrant Reevaluation and Review nor were the letter reports of Dr. Hussussion and Dr. Waisman considered by Local Board 44 prior to petitioner's induction.

## SCOPE OF REVIEW

The scope of this Court's review of Selective Service System determinations was recently defined by the Eighth Circuit in United States v. Watson (C.A.8), 442 F.2d 1273, 1277:

"Decisions of the local boards are final even though erroneous if they are made in conformity with the regulations. It is not for the courts to sit as super draft boards substituting their judgment on the weight of the evidence for that of the designated agencies. The scope of the review is narrow, permitting the reviewing court to overturn a draft classification only if it has no basis in fact or if the local board's action has the effect of denying appellant basic procedural fairness."

## CONCLUSIONS OF LAW

Even under this very narrow scope of review, it is concluded that petitioner was denied "basic procedural fairness" when AFEES failed on November 11, 1971, to conduct a Medical Reevaluation and Review under Part IV of Local Board Memorandum No. 121, *supra*. This conclusion is warranted despite the irresponsible evasive misconduct of petitioner preceding his indictment.

Dr. Hussussion stated under heading of "Physical Examination":

"Examination reveals bilateral 3rd degree flat feet evident on both feet. The left ankle was examined and the right was examined for comparison. The left ankle presents good range of motion equivalent to the opposite side. However on forcible inversion of the foot one can definitely feel a slight rocking motion at the ankle itself. The remainder of the examination is normal. The lateral aspect of the ankle is tender. After 2 or 3 of these inversion manipulations of the ankle during x-rays as well as during my examination the patient's lateral aspect of the ankle remains very painful."

Dr. Hussussion's diagnosis was "1. Chronic mild tear of the lateral collateral ligament of the left ankle. 2. Bilateral 3rd degree flat feet."

Dr. Waisman stated under "Examination":

"The patient walks satisfactorily without a limp. He does show some thickening about the ankle at this time. Tenderness is localized to the lateral aspect of the ankle over the lateral collateral ligaments. There is slight instability or excess mobility of the foot in the ankle mortise. When forcefully inverting the foot the patient does experience some pain localized in the ankle joint. Likewise, he has some pain on forced dorsiflexion.

"Further examination reveals severe bilateral flat foot deformity with flattening of the longitudinal arches to a severe degree probably grade III.

"X-rays of his ankles taken with various attempts at strain submitted from Dr. J. Hussussion, dated 9/27/71 were reviewed. These films do show a very slight tilt of the talus in the ankle mortise on a strain film. There is an exostosis on the dorsum of the talus at the site of the attachment of the ankle joint. This is characteristic for repeated strain of the ankle capsule and represents a response to this type of injury.

"This young man has had significant injury to his left ankle on repeated occasions and as a result he has

had some difficlulty with prolonged standing, walking and running and a feeling of instability of the left ankle. It is my opinion that he has a chronic strain of the lateral collateral ligament and there is superimposed degenerative changes as manifested by the spur formation on the talus as reflected in the x-rays. This problem together with his 3rd degree flat foot condition would make prolonged walking and vigorous physical activities that would be required of active Military Service difficult."

## PETITIONER'S FIRST GROUND FOR RELIEF

In support of paragraphs 19 and 20 of his petition, petitioner erroneously contends that the induction of petitioner was unlawful because the Local Board was obligated on November 11, 1971, on receipt of the letters of Drs. Hussussion and Waisman, to reopen the classification of petitioner before the induction on November 12, 1972.

Petitioner's erroneous first contention is that under 32 CFR § 1625.2, information submitted by a registrant after an order to report for induction may be sufficient for reclassfication under specified circumstances; [4] that it is the function of the local board to determine whether, under the circumstances presented by the registrant, a classification should be reopened and considered anew and this discretionary determination may not be left to the clerk or secretary of a local· board, citing United States v. Ford (C.A.1), 431 F.2d 1310; Battiste v. United States (C.A.5), 409 F.2d 910; United States v. Miller (C.A.9), 455 F.2d 358 and United States v. Jackson (C.A. 5), 454 F.2d 821; that the Supreme Court of the United States has recently stated in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362, that under this regulation the local board must reopen a classification whenever a *prima facie* case for a different classification is presented by the registrant; and that the applicable rule is contained in the following quotation from the Mulloy case:

"Though the language of 32 C.F.R. § 1625.2 is permissive, it does not follow that the board may arbitrarily refuse to reopen a registrant's classification. While differing somewhat in their formulation of precisely just what showing must be made before a board is required to reopen, the courts of appeals in virtually all Federal Circuits have held that where the registrant has set out new facts that establish a prima facie case for a new classification, a board must reopen to determine whether he is entitled to that classification. Not to do so, these courts have held, is an abuse of discretion, and we agree," 398 U.S. at 415, 90 S.Ct. at 1770, 26 L.Ed.2d at 367 and 368.[5]

4. § 1625.2 When registrant's classification may be reopened and considered anew.
"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational·deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of·a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

5. See Vaughn v. United States (C.A. 8), 404 F.2d 586, at 590; Davis v. United States (C.A. 8), 410 F.2d 89 at 93.

It is further contended by petitioner that the reports of medical examinations submitted by petitioner presented a *prima facie* case for reopening under 32 CFR § 1625.2;[6] that the failure of the local board to consider the new information submitted by petitioner precluded any possibility of a favorable decision to reopen; that whether or not Local Board 44 would have reopened petitioner's classification under all the circumstances depends upon whether "the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control" § 1625.2, *supra*; that such a finding should be made initially by the local board under United States v. Jackson, *supra*, 454 F.2d at 825;[7] that if the board were to find that significant facts were presented by petitioner making a *prima facie* case for reopening under § 1625.2 it would be required to reopen the classification and afford petitioner his procedural rights to personal appearance before the board and an appeal from any decision retaining petitioner in a 1–A classification; that the failure of the local board to consider petitioner's substantial, non-frivolous request for reopening was prejudicial and deprived him of "the opportunity for full administrative review [which] is indispensable to the fair operation of the Selective Service System," under Mulloy v. United States, *supra*, 398 U.S. at 416, 90 S.Ct. at 1771, 26 L.Ed.2d at 368; that the classification system is a discretionary function of the local board which must be exercised in an intelligent manner, based upon all relevant and material information presented, from which is formed an overall view of the registrant under applicable physical, mental and moral standards; and that if the local board is to have meaning and substance, it must be that the "facts prerequisite to the exercise of judgment should come to its attention" citing United States v. Ford, *supra*, 431 F.2d at 1312.

■ These contentions of petitioner, and authorities (some of which are noted above) relied on in support thereof, are not applicable because, among other reasons, they do not take into account either the rule announced in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, or the procedures provided by Local Board Memorandum 121, *supra*, which became effective as of June 1, 1971. See also, United States v. Whalen (C.A.8), 451 F.2d 755. Under the circumstances of this case petitioner was entitled, not to reopening of his classification by the Board, but, to application of Part IV of Local Board Memorandum No. 121, *supra*. In fact this is what petitioner's Wisconsin counsel contends was the agreement that resulted in dismissal of the indictment and in petitioner's reporting for induction on November 12, 1972. Petitioner undertakes to carry the cases relied on to absurd lengths, while ignoring the procedures relied on in his second ground for relief.

## PETITIONER'S SECOND GROUND FOR RELIEF

■ In his second ground for relief stated in paragraph 21, petitioner contends he was erroneously denied Medical Reevaluation and Review under Local Board Memorandum No. 121 and AR601–270. In respect to the Local

---

6. See Army Regulation 40–501 § 2–10(b).

7. In *Jackson*, the Court stated:
   "We think it is for the local board in the first instance to determine the issues of fact and the interpretation of the Regulations. It is not for the courts to first rule on an arguable claim for a deferment when the board has failed to consider the issue or has applied the wrong standard."

And in United States v. Ford, *supra*, 431 F.2d at 1313, it was said:
   "[Not] every request or any information rises to the level where reopening is required. But the board must at least make the assessment as to whether 'non-frivolous allegations of facts' of sufficient significance were presented."

Board Memorandum No. 121, this contention has merit, though there was no violation of procedures by his Local Board, which properly submitted the letters of Drs. Hussussion and Waisman to AFEES for consideratin prior to induction of petitioner on November 12, 1971. The material portion of AR601–270, (Section e) did not become effective until October 15, 1972 and is therefore irrelevant.

When, after the issuance for the order for induction, the Local Board properly transmitted the evidence to AFEES as required by the first sentence of Part IV of Local Board Memorandum No. 121, *supra*, AFEES failed thereafter to initiate the procedures for Medical Reevaluation and Review prescribed by Part IV of Local Board Memorandum No. 121. Petitioner's induction without initiation of the required procedures was a violation of Local Board No. 121, *supra*.

■ The nature of the relief to which petitioner is entitled because of these violations remains to be determined. Cf. Naskiewicz v. Lawver (Local Board No. 61) (C.A.2), 456 F.2d 1166. It is important in this connection to note that the Selective Service System is legally bound to comply with its own regulations. Naskiewicz v. Lawver (Local Board No. 61), *supra*, and authorities therein cited.

■ Part IV of the Memorandum permits and contemplates Medical Reevaluation and Review *after* induction, in the absence of exceptional circumstances warranting deferment of induction. There are no such exceptional circumstances stated or appearing in this case. The exceptional circumstances of prior misconduct and evasion by petitioner of his lawful order to report for induction would dictate immediate induction in this case as the proper action. Therefore the induction of petitioner on November 12, 1971, was not unlawful or invalid.

The proper remedy in this case is to order the temporary release of the petitioner to inactive duty while the United States Army and the Selective Service System initiate and complete a delayed Medical Reevaluation and Review under Part IV of Local Board Memorandum No. 121. After a final decision under the delayed Medical Reevaluation and Review petitioner should be restored to active duty unconditionally or given an appropriate discharge for medical reasons. Cf. Naskiewicz v. Lawver (Local Board No. 61), *supra*. Under the circumstances credit for the time petitioner is on inactive duty will not be required by this judgment, but shall depend on Army Regulations and decisions thereunder.

## THE REMAINING GROUNDS FOR RELIEF

■ Petitioner's claim in paragraph 23 of his petition that his induction was invalid because the Local Board failed to mail him a classification questionnaire is insubstantial and without merit. By failing to register when required he made the mailing of the questionnaire impossible. When after more than five months late he registered and accepted help of a clerk or secretary in filling out the questionnaire, he waived any compliance with the requirement of mailing of the questionnaire, if it was required after his failure to register.

The ruling on the second ground for relief makes it unnecessary to discuss the ground for relief stated in paragraph 22 of the petition quoted above. Delayed compliance with Part IV of Local Board Memorandum No. 121 is required by the decision herein.

## THE APPROPRIATE RELIEF

Because of the failure to conduct a Medical Reevaluation and Review required by Part IV of Local Board Memorandum No. 121 the temporary release of the petitioner to inactive duty will be ordered. The release will be without prejudice to further proceedings by AFEES, USAREC and other Selective Service authorities and agencies based on the record and papers available on November 21, 1971. See Naskiewicz v. Lawver (Local Board No. 61), *supra*, in-

volving a similar case under Part III of Local Board Memorandum No. 121, *supra*. The order for release will be also without prejudice to criminal proceedings for petitioner's alleged evasive misconduct prior to November 12, 1971, if he hereafter fails to comply with his obligations based on a subsequent valid confirmation of his prior induction if any. If petitioner's prior induction is confirmed, he shall be granted credit for his military service until the time he is released to temporary inactive duty.

## ADDENDUM

### NATIONAL HEADQUARTERS SELECTIVE SERVICE SYSTEM WASHINGTON, D.C. 20435

LOCAL BOARD MEMORANDUM NO. 121

ISSUED: JUNE 25, 1971

SUBJECT: PROCEDURE FOR PROCESSING INQUIRIES REQUESTING MEDICAL REEVALUATION —REEXAMINATION OF REGISTRANTS

### I. INTRODUCTION

At the present time, the Headquarters, United States Army Recruiting Command (USAREC), Department of the Army, receives many inquiries from Members of Congress, attorneys, and individual registrants regarding the physical acceptability of registrants after a physical examination. It has been the practice of Headquarters, USAREC, to accomplish a review in response to such inquiries, make a determination of a registrant's medical acceptability, and reply to such inquiries directly without referral to Selective Service. In the future, all inquiries requesting medical reevaluation which are received at Headquarters, USAREC, will be referred to this headquarters for processing.

The Selective Service System and the Department of the Army are in agreement with the desirability of providing registrants with the opportunity of obtaining a review of the determination of their acceptability or nonacceptability for military service. As it is the responsibility of Selective Service to select and deliver registrants for physical examination, it has been decided that all questions regarding a registrant's physical acceptability will be initiated by Selective Service and processed through Selective Service channels of communication. Medical reevaluation and review will be accomplished by the Armed Forces Examining and Entrance Station (AFEES); and evaluation, review and final determination of medical acceptability or nonacceptability, by Headquarters, USAREC. In this manner, registrants will be assured of a final review by the highest examining authority and uniform consideration of questions regarding their medical acceptability for military service. Because of operational considerations, the *opportunity for* this final review procedure shall be offered *one time only* except in cases when it is determined by the State director of Selective Service that a substantive change in physical condition has occurred. This procedure shall be effective June *1, 1971*.

### II. PROCEDURE FOR PROCESSING MEDICAL RECORDS UPON SUBMISSION OF NEW EVIDENCE

It is recognized that there may be registrants who do not provide details of their physical condition prior to or at the time that they report for scheduled preinduction physical examination. It is also realized that changes in a young man's physical condition do occur which are routinely reported to his local board. In order to permit submission of such additional information and still afford registrants the opportunity to obtain a final review and determination of their medical acceptability or nonacceptability, such information submitted by the registrant to his local board will be processed under the present procedure by which local boards forward this information together with his medical records to the AFEES on a "papers only case" basis. The AFEES will return such information to his local board and

report any change in status accordingly. In cases where the local board cannot determine whether the registrant has expressed or implied a request for final review, such inquiries shall be forwarded to the appropriate State director for decision as to whether or not to process the registrant's case for final review by Headquarters, USAREC.

## III. REGISTRANT MEDICAL RE-EVALUATION AND RE-VIEW SYSTEM

The following procedures will be utilized in the event that the local board receives a registrant's written inquiry regarding his physical acceptability subsequent to his physical examination and *prior* to the issuance of an Order to Report for Induction (SSS Form 252):

a. The local board shall consider all new medical information in the file. After consideration of the information, the local board shall forward the information, and registrant's medical records to the AFEES when they determine it is a "papers only case." Should the local board determine it is a request for reevaluation or if the local board is unable to make a determination, the information and the medical records shall be forwarded to the State director.

b. State directors shall be responsible for review of the inquiry, medical records, and any additional information submitted. It is desirable that such inquiries be supported by medical evidence (e. g., doctors' statements, confirmation of symptoms or treatment, hospitalization records, test reports and other documentation) in order to permit proper medical reevaluation and review by the Armed Forces medical authorities. Although such documentation is desirable, the State director may initiate a request for review without such evidence. The State director, unless he finds that the registrant has already been afforded a final reevaluation or that the records should be processed as a "papers only case" or that for other good reasons the case should not be processed, shall initiate a request for Registrant Medical Reevaluation and Review and forward his request, the inquiry, and all medical records and information to the AFEES normally used by the registrant's local board. In those instances where the State director administratively determines that neither a final reevaluation or "papers only" evaluation is appropriate, a statement shall be attached to the registrant's medical records indicating the basis for this determination.

c. The AFEES will accomplish a review of medical records and any supplementary information submitted. In cases where the AFEES Commander determines that the registrant shall be returned for reexamination or for consultation, the State director will coordinate with the AFEES and arrange to deliver each registrant with the next scheduled delivery for the local board and advise the local board to schedule the registrant accordingly. A registrant will not be delivered specially for required reexamination or consultation. If the registrant is away from his local board area, he should have the opportunity to apply for transfer for necessary consultation and reexamination under the same criteria applicable to transfer for Armed Forces preinduction examination. The State director should coordinate in each case with the AFEES normally used by the registrant's local board and to which his medical records were sent initially for reevaluation to insure that all records and the recommendation of the AFEES Commander are returned to the local board. The AFEES to which the registrant is delivered for required reexamination or consultation must receive all medical records and copies of correspondence and other documents as appropriate in order to identify the reexamination or consultation as a part of the procedure outlined in this local board memorandum, and submit for final review to Headquarters, USAREC. This coordination is essential in cases of transfers for reexamination or consultation. Upon completion of the re-

view of medical records or accomplishment of reexamination or consultation by the AFEES, the inquiry, together with the registrant's medical records, all information and *tentative* determination will be forwarded to Headquarters, USAREC, by the AFEES.

d. Headquarters, USAREC, will review the inquiry, all medical records, information, make the final determination of a registrant's medical acceptability or nonacceptability and return a statement of its findings and the medical records to the AFEES.

e. The AFEES will in turn forward this statement and the medical records to the registrant's local board through the appropriate State director. If a change in his medical acceptability or nonacceptability has been determined, the AFEES will issue a new DD Form 62 (Statement of Acceptability).

f. Upon receipt of this statement or DD Form 62, as applicable, and medical records, the registrant's local board will accomplish action as follows:

(1) A letter will be sent to the registrant indicating that based on Registrant Medical Evaluation and Review accomplished by Headquarters, USAREC, Department of the Army, his status has been changed to (or continued as) "fully acceptable" or "not acceptable," as applicable.

(2) If status has changed as a result of review, a new Statement of Acceptability (DD Form 62) will be issued accordingly.

(3) If now found "not acceptable," after previous determination of "fully acceptable," his classification will be reopened and he will be considered for classification into Class I–Y or Class IV–F at the next scheduled local board meeting.

Medical records, supplementary information, *and the findings of Headquarters, USAREC*, will be placed in the registrant's cover sheet and forwarded to the appropriate AFEES at the time of induction.

## IV. MEDICAL REEVALUATION AFTER ISSUANCE OF ORDER TO REPORT FOR INDUCTION

When the local board receives an inquiry concerning his examination, or a request for medical reevaluation and review from a registrant who has been issued an Order to Report for Induction (SSS Form 252), the local board shall notify him to bring any new documentation with him to the induction station at the time that he reports for induction. AFEES will conduct such reevaluation and review as is appropriate and authorized under applicable Army Regulations including soliciting advice and counsel of Headquarters, USAREC, if indicated, by the most expeditious means. Induction will proceed as scheduled including tests, consultation, or special examination as may be required. If these procedures require additional time, the registrant may be held over pending completion of his processing. Inductions scheduled will not be postponed for accomplishment of Registrant Medical Reevaluation and Review System procedure except in extreme circumstances. Registrants who have reported for induction and for whom additional tests, consultation, or evaluation by Headquarters, USAREC, is required shall be indicated as Acceptability Undetermined (A.U.) on the Delivery List (SSS Form 261). Under no circumstances shall DD Form 62 (Statement of Acceptability) indicating "Not Qualified—RBJ——— days" be issued for registrants under orders to report for induction.

## V. PROCESSING OF INQUIRIES WITHIN THE SELECTIVE SERVICE SYSTEM

In order to avoid duplicate processing of separate inquiries, the various levels of Selective Service will maintain a suspense file of inquiries regarding a registrant's physical acceptability. Congressional inquiries received by National Headquarters will be forwarded to the State director concerned for initiation of Medical Reevaluation and Review,

where appropriate, and returned to National Headquarters for reply after receipt of the determination of Headquarters, USAREC. Other inquiries referred to local boards or State headquarters or directed to them will be replied to by the State headquarters or local board as appropriate after the review is completed.

## VI. PROCESSING OF INQUIRIES REGARDING AFEES ADMINISTRATION, EXAMINATION PROCEDURES, OR EXAMINATION FACILITIES

Inquiries may be criticism of AFEES procedures or may be a combination of such criticisms and claims of physical disqualifications. These inquiries may be of the following types:

**a. Administration:** Inquiries in this category may state that an administrative error had occurred in that items of medical history, examination records, or medical documentation submitted by the registrant were not properly reviewed, evaluated, annotated or considered at the time of examination. Other allegations may include statements that all required items of the examination were not correctly entered on the appropriate forms or that AFEES personnel treated individual registrants improperly during the examination.

**b. Examination Procedures:** Other inquiries may include the criticism of the manner in which specific aspects of the examination or the consultation were accomplished and might point out hasty or incomplete handling of portions of the examination or specific omissions of segments of the examination, testing procedures, laboratory studies, and/or X-ray inspection.

**c. Examining Facilities:** Inquiries of this nature may cite nonfunctioning of examination equipment or substandard plant facilities rendering medical examination or resultant determination invalid.

Inquiries that fall in full or in part in the above categories should be forwarded by local boards to the State director. The State director will in turn forward such inquiries to the AFEES concerned. If the inquiry expresses or implies a request for reevaluation or review of medical condition, the State director will process a request in accordance with paragraph IIIb. above. Correspondingly, inquiries having to do with statements of improper administration, examination procedures, or examination facilities received by National Headquarters will be forwarded to Headquarters, USAREC. Such inquiries which also express or imply a request for review or reevaluation of medical acceptability or nonacceptability will be forwarded to the State director concerned for his review and initiation of request for Registrant Medical Evaluation and Review procedure, where appropriate.

## VII. REEXAMINATION OF REGISTRANTS

Registrants who have been found unacceptable by AFEES at *preinduction* examination with "Reexamination Believed Justified" (RBJ) indicated on the Statement of Acceptability (DD Form 62) shall be considered for reclassification in Class I–Y immediately after receipt of DD Form 62. The recommended time interval before reexamination specified by AFEES shall have no influence upon consideration of such registrants for classification in Class I–Y.

State directors shall determine when, if ever, to return any registrant for reexamination based on operational considerations; i. e., random sequence cut-off number, availability of funds, probability of acceptance, and workload of the local board.

A registrant may not be returned to AFEES for reexamination more than one time except in cases when additional reexamination or consultation is required to evaluate a new disqualifying defect or new information concerning his previously disqualifying defect.

Letter to All State Directors (OOPR) dated October 22, 1970, Subject: Reexamination of Registrants and Procedure for Processing Special Interest Inquiries, and Letter to All State Direc-

156

tors (OO–26) dated May 27, 1971, Subject: Procedure for Processing Inquiries Requesting Medical Reevaluation—Reexamination of Registrants, are rescinded.

s/CURTIS W. TARR.