UNITED STATES of America, Plaintiff-Appellee,

v.

Frank Peter TERESI, Defendant-Appellant.

No. 72–1009.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 22, 1972.

Decided March 2, 1973.

Douglas R. Carlson, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Theodore T. Scudder, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and ESCHBACH, District Judge.[1]

ESCHBACH, District Judge.

Defendant was convicted after a bench trial of a charge of wilfully refusing to submit to induction into the Armed Forces in violation of 50 U.S.C. Appendix § 462. His appeal raises four questions: (1) whether the local board should have reopened his classification to consider his claim for a hardship deferment, (2) whether the board's actions constituted a de facto reopening of his classification, thus cancelling his prior order to report for induction, (3) whether the induction order was invalidated by successive postponements granted by the board, contrary to applicable regulations, and (4) whether the use by the appeal board of a resumé of defendant's Selective Service file deprived him of due process and rendered invalid his I–A classification and the induction order

---

1. District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

based thereon. We have concluded that the conviction must be affirmed.

On May 3, 1966, defendant registered with his local board. His responses to questions contained in a Classification Questionnaire indicated that he did not claim to be a conscientious objector, that he suffered from no disqualifying physical condition, and that he had no family or other problems. He later informed the board that he had enrolled in college and was granted a II–S student deferment. On January 16, 1969, shortly after defendant's withdrawal from college he was reclassified I–A. Defendant appealed this classification on the basis of his claims that he suffered from a disqualifying medical condition, despite the fact that he had not yet received an Army physical examination. The appeal board classified defendant I–A on June 16, 1969. On August 18, 1969, defendant was given the customary physical examination, including a consultation with a specialist regarding his claims of disqualification. All medical papers were then reviewed by the Surgeon General, and, on October 15, 1969, the local board notified defendant that he remained physically qualified for induction.

On November 18, 1969, defendant was ordered to report for induction on December 1, 1969. On the date for induction, defendant's wife telephoned the local board to explain that defendant's car had broken down in Michigan. On December 11, 1969, the board notified defendant that his induction would be postponed until the first induction call after January 1, 1970. On January 5, 1970, the board sent to defendant a second notice, rescheduling his induction for January 19, 1970 pursuant to the earlier postponement notice. Defendant again failed to report on January 19, 1970, this time without explanation. During February and March, 1970, the board was unable to locate defendant.

On April 13, 1970, defendant wrote to his board, acknowledging his failure to report for the second induction. He explained that he and his wife had fought in late December and then separated. On January 2, 1970, defendant had left and traveled in the West.

On April 21, 1970, the local board mailed a notice to defendant, rescheduling a third date of May 11, 1970 for his induction. Three days later, the board received for the first time defendant's request for a hardship deferment (III–A) and immediately mailed a Dependency Questionnaire to be filled out and returned by defendant. Defendant informed the board that he was not living with his wife and that her address was unknown; his eight-month-old daughter was living with him in his home. He stated that his wife had been taking drugs and was not capable of taking care of their daughter. Prior to the separation in December and defendant's subsequent disappearance, he and his wife and daughter had been living with defendant's parents. After defendant's disappearance, his wife and daughter moved to the home of her parents. Defendant stated that while he was away, his wife left her parents' home from time to time, including a period of six days while she was away with another man. During these times, she left her daughter with neighbors.

When defendant returned from his travels, a former employer rehired him as a die-cutter. While defendant worked ten hours a day, a good friend served as babysitter. Defendant, on the form provided by the board, listed a group of unidentified bills totaling $1,302 and monthly expenses of $326. He stated his earnings were $160 per week. He claimed that his wife was unfit to take custody of their child, that her parents and his father worked, and that his mother could not care for the child because she had been having epileptic fits. A note from defendant's mother-in-law attached to the questionnaire stated that her daughter was emotionally unable to care for the child.

Following receipt of the foregoing information, the board asked defendant to appear for an interview on June 11, 1970. On the basis of that interview

and a review of defendant's file, the board decided not to cancel defendant's induction notice. On June 12, 1970, the board, in a letter to defendant, informed him of its decision. On June 19, 1970, the local board issued an order rescheduling a fourth induction date for July 22, 1970.

On July 17, 1970, defendant wrote to the board requesting SSS Form No. 150 for conscientious objectors. He stated that he did not previously know that he could apply for several deferments. On the same date, defendant's induction was postponed until further notice and he was mailed the appropriate form to be filled out and returned. Defendant returned the completed form on August 17, 1970.

On August 27, the board reviewed defendant's file and, on August 31, wrote to defendant that all evidence had been considered and his classification had not been reopened. A fifth notice was mailed to defendant on September 4, 1970, rescheduling his induction for September 17, 1970. Defendant reported on that date but refused to submit to induction.

### I.

 Defendant first contends that his classification should have been reopened upon the presentation of what he claims was a prima facie claim for a hardship deferment. Selective Service regulations provide that where an induction order has already been issued, reopening may occur under the following conditions: (1) Facts are presented which were not considered when the registrant was classified; (2) such facts, if true, would justify a change in the registrant's classification; and (3) the local board specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control. 32 C.F.R. § 1625.2 (1972). The requirement that a local board must have a "basis in fact" for an original classification, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), "is equally applicable to the action of the board in determining whether or not changed conditions justify a reopening of the registrant's classification and consideration of his claim to a different classification." United States v. Ransom, 223 F.2d 15, 17 (7th Cir. 1955); see also Woo v. United States, 350 F.2d 992, 996–997 (9th Cir. 1965); Radel v. Volatile, 312 F.Supp. 1300, 1303 (E.D. Pa.1969). Thus, if the board had a basis in fact for concluding that any one or more of the above-stated conditions for reopening was not satisfied, then its refusal to reopen defendant's classification may not be overturned. We think that such a basis in fact did exist at least with respect to the conclusion that there had been no change in defendant's status resulting from circumstances beyond his control. Defendant's conduct in voluntarily absenting himself for a period of some three months was a factor which clearly negatived any claim that he had no control over changes which may have occurred in the interim. It was primarily during defendant's prolonged and unexplained absence that the circumstances relating to his wife's alleged lack of fitness to care for their daughter arose. An examination of defendant's file reveals that whatever conditions of hardship may have developed subsequent to defendant's original I–A classification were caused in large part by his own conduct.

██ In addition to the absence of circumstances over which defendant had no control, the board's refusal to reopen was also justified by defendant's failure to present a prima facie case for reclassification. In his request for a hardship deferment defendant claimed that his wife had been leaving their child with neighbors and that he was requesting the deferment "out of necessity to support and care for my child". However, although he stated that the child was living with him in his home, he was working ten hours a day as a die-cutter while he left his daughter to be taken care of by a friend. While he claimed that his wife was unfit to care for the

child, he took no steps to obtain custody and did not seek a legal separation from his wife. Moreover, defendant's claim that he was the only person who was financially or otherwise able to support and care for his child is rebutted by the fact of his disappearance from early January, 1970, until the middle of April, 1970, during which time he was completely out of contact with his family and provided no support or care for his daughter. Under these circumstances the board had ample basis in fact for a finding that defendant had failed to present a prima facie case for a hardship deferment. Even if, standing alone, some of defendant's claims had been sufficient to make out a prima facie case, the board properly considered defendant's entire file, including reliable information contained therein which conclusively refuted defendant's claims of extreme hardship. *See* Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970); United States ex rel. Luster v. McBee, 422 F.2d 562 (7th Cir. 1970), cert. denied, Luster v. Cooksey, 400 U.S. 854, 91 S.Ct. 74, 27 L.Ed.2d 92 (1970); United States v. Burlich, 256 F.Supp. 906, 911 (S.D.N.Y.1966).

## II.

■ Defendant contends that the board, while purporting to refuse to reopen his classification, did in fact reopen by inviting him to appear before the board and by deciding the merits of his claims on two occasions. Such a de facto reopening, he claims, cancelled his prior induction orders and gave him the right to a formal personal appearance and an administrative appeal. We find nothing in the record of this case to indicate a de facto reopening of defendant's classification based upon either the informal interview of June 11, 1970, or the board's consideration of the merits of defendant's claims. The interview was granted to defendant as a matter of courtesy so that all possible information relevant to the question of reopening could be considered. The mere granting

of such an interview does not constitute a reopening of a registrant's classification. United States ex rel. McBee v. Luster, *supra*, 422 F.2d at 568.

■ Defendant points to the following notes of the board based upon his interview on June 11, 1970, to support his contention that a decision on the merits was reached:

2:30 Reg has separated from wife is taking care of 9 mo. child—Friend is taking care of child—is employ as die cutter; the separation not legal, wife on drugs—salary 100 per week —exp $326 per mo—works 10 hrs per day. All info considered and should be re-ordered for induction.

Defendant further relies upon the following language in the letter he received from the board subsequent to that interview:

Please be advised from your informal interview of 11 June 1970, the Local Board considered the information in your file and the information given at your interview. They did not feel they could cancel your induction notice and reclassify you. Therefore, you will be re-ordered to report for induction with our next call.

Although neither the board's notes nor the letter to defendant contains any reference to a refusal to reopen, the board did state in its letter that it could not *cancel* defendant's induction notice. A reopening would have required such cancellation (32 C.F.R. § 1625.14), as well as the issuance of a new classification, even if defendant were placed in the same class he was in prior to reopening (32 C.F.R. § 1625.11). In reviewing the determinations of Selective Service boards, we have "carefully refrained from imposing any requirement . . . that they promulgate a court-like formal finding of fact". United States ex rel. Hemes v. McNulty, 432 F. 2d 1182, 1187 (7th Cir. 1970). Thus, although the findings of the board in this case could have been more explicitly stated, we do not regard the omission of a specific reference either to the refusal

to reopen or to the absence of circumstances beyond defendant's control as conclusive evidence of a de facto reopening.

■ The written findings of the board do not indicate an inquiry into the merits of defendant's hardship claim to any greater extent than was necessary to determine that a prima facie case was not presented. As indicated above, defendant's hardship claim was conclusively refuted by information contained in his file and supplemented by the informal interview. No "evaluative determination adverse to the registrant's claim on the merits", Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970), was made by the board in this case. Even if the board had made such a determination, the presence in defendant's file of information conclusively refuting his claim of a change in status due to circumstances beyond his control provided an independent ground for the refusal to reopen. See United States v. Jones, 447 F.2d 589, 592 (7th Cir. 1971). The absence of a specific finding to that effect did not result in a de facto reopening. The board was precluded from reopening unless it *specifically* found a change in status resulting from circumstances beyond defendant's control. 32 C.F.R. § 1625.2 (1972). The regulations do not contain a converse requirement of a specific finding of no such change in status before the board may refuse to reopen.

■ For substantially the same reasons, no *de facto* reopening occurred when the board considered defendant's claim for conscientious objector status (I–O) in August, 1970. The board stated in its Report of Information on August 27, 1970, as follows:

The local board reviewed the complete file of this registrant and felt that he was not sincere in any of the requests that he has made.

On August 31, 1970, the local board wrote to defendant as follows:

The local board reviewed your file and your SSS Form 150 that was submitted August 17, 1970. All evidence was considered. No change in the registrant's status resulting from circumstances over which he had no control. The classification was not reopened.

It is well settled that consideration by a local board of a registrant's post-induction order I–O claim does not result in a de facto reopening of his classification. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); United States v. Martin, 452 F.2d 630 (7th Cir. 1971); United States v. Jones, *supra*; Wright v. Ingold, 445 F.2d 109 (7th Cir. 1971). Since the only claim pending before the board on August 27 was the claim for conscientious objector status, we do not read the board's reference to "the complete file" and "any of the requests" as a reopening for further consideration of the prior hardship claim. In any event, no new evidence relating to that claim was presented to the board, and the letter of August 31, 1970 stated explicitly that the board found *no change in defendant's status resulting from circumstances beyond his control.*

### III.

■ Defendant next contends that the board's postponements of his induction were contrary to 32 C.F.R. § 1632.2 (1972) in the following respects: (1) his induction was postponed more than twice and for more than 60 days beyond the second postponement; (2) his induction was postponed, on July 17, 1970, "until further notice", and for more than 60 days beyond that date; and (3) his induction was postponed four times for reasons other than those authorized by 32 C.F.R. § 1632.2(a). Defendant argues that his original induction order of November 18, 1969, expired 60 days after the postponement of April 21, 1970, because the board was without authority to grant further postponements. He claims that he was prejudiced in that the resulting invalidity of that induction order required the board to apply pre-induction order standards to his III–A and

I–O claims, under which standards a reopening of his classification would have been required, along with personal appearance and administrative appeal rights. However, every postponement granted defendant by his local board was due to his actions and for his benefit. Under these circumstances it was within the discretion of the board to aid defendant by allowing him more time than the regulations specify. United States v. Benson, 469 F.2d 1356 (7th Cir. November 28, 1972); United States v. Foster, 439 F.2d 29 (9th Cir. 1971). A registrant who has already failed without excuse to report for induction as ordered by his local board, as did this defendant on January 19, 1970, is in a particularly poor position to assert excessive postponements. *See* United States v. White, 447 F.2d 1124 (9th Cir. 1971), *cert. denied*, 404 U.S. 1049, 92 S. Ct. 714, 30 L.Ed.2d 740 (1972). In granting defendant several postponements and in considering his belated claims for deferment, instead of reporting him to the U. S. Attorney for prosecution, the local board extended defendant every conceivable courtesy. Therefore, in accordance with 32 C.F.R. § 1632.2(d) (1972), the postponements complained of by defendant operated only to postpone the reporting date and did not render invalid the original induction order of November 18, 1969.

### IV.

 Finally, in a completely unrelated argument, defendant contends that the appeal board's use of a resumé of his Selective Service file in reviewing his classification on June 16, 1969 was improper and constituted a denial of due process. He argues that the summary was not placed in his file, but was either lost or destroyed, and that therefore he was never informed of its existence and was afforded no opportunity to rebut its contents. Defendant does not claim, however, that the summary was anything more than just that—a summary of material already present in his file. The use of such summaries by an appeal board promotes efficient review of a large number of cases and, at least where the insertion of extrinsic materials is not alleged, does not violate due process. *See* United States v. Young, 324 F.Supp. 69, 72–73 (D.Minn.1970). Even if the procedure used by the appeal board were improper, defendant has shown no resulting prejudice. The only claim raised by the defendant in appealing his I–A classification was a claim for deferment based upon physical disqualification. On June 16, 1969, when the appeal board reviewed his classification, however, defendant had not yet been given a pre-induction physical examination. He was subsequently given such an examination, as well as a consultation with a specialist and a review of his medical claims by the Surgeon General. Under these circumstances any defect in the proceedings of the appeal board was cured by this full review of defendant's claims and could have resulted in no prejudice to him.

For the foregoing reasons, the judgment of conviction is affirmed.